## EVANS vs. SHARP, impleaded, etc.

*Constitutional law — Acts authorizing the re-assessment and re-levy of taxes.*

1. The decision in *Mills v. Charleton, County Treasurer, and others, (ante,* p. 400), (1) in respect to the meaning of sec. 18, art. IV. of the state constitution (which declares that "no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title "), and (2) in respect to the power of the legislature to authorize a re-assessment and re-levy of taxes or special assessments, where the first assessment thereof has been adjudged invalid, either for some irregularity in the proceedings, or for some want of power in the municipal authorities — re-affirmed.

2. Where, *after* the first assessment of a tax upon land of defendant in a city for the improvement of an adjoining street, and *before* the re-assessment of such tax, the land had been subdivided into three lots, only two of which abutted upon said street, the question whether the tax was properly re-assessed *upon all three of said lots,* is *held* unimportant in view of the fact that defendant, although he had conveyed one of said *two* lots and part of the other, is still personally liable for the whole amount so re-assessed.

APPEAL from the Circuit Court for *Winnebago* County.

Action to restrain proceedings for the collection of an assessment on plaintiff's lots in the city of Oshkosh, to pay for a Nicholson pavement.

The city of Oshkosh, and the county treasurer and board of supervisors of Winnebago county, are joined as defendants with *William Sharp,* one of the contractors who laid the pavement. The complaint sets out at length the pleadings and proceedings in an action commenced by the plaintiff in 1867, to restrain the collection or enforcement of the original assessment made in 1866, against a part of lot 1, in block 40, then owned by him, which fronted ninety-four feet on Main street and one hundred and ten feet on Washington street, to pay for a Nicholson pavement on Main street, — alleging, as grounds therefor, that such pavement was patented, and the city council had no authority to order the streets laid therewith ; that the contract for paving was not let to the lowest bidder ; and that the assessment was

made and inserted in the tax roll without authority of law. It further alleges that a decree in his favor was entered in said action in June, 1869, perpetually enjoining all proceedings to collect or enforce the said assessment, and declaring the street commissioner's certificate, issued to the defendant *Sharp* and his co-contractor, to be void, and requiring it to be surrendered up to be canceled; and states that such judgment has not been appealed from, but is in full force; and that such certificate has been surrendered and canceled; and then sets out the proceedings of the common council, clerk and treasurer of the city of Oshkosh in re-levying and re-assessing the said special tax or assessment upon the same property, under an act of the legislature passed in 1870 (ch. 167, P. & L. Laws of 1870), and returning the same to the county treasurer as unpaid; that since said original assessment the property has been subdivided into three lots, of which only two front on Main street, and portions of those have been sold and conveyed by the plaintiff with covenants of warranty, but such re-assessment is made against and apportioned among all three of the lots; that the county treasurer has advertised and threatens to sell said lots for said pretended assessment; that the defendants claim it to be a legal and valid lien on the premises; and that the defendant *Sharp* claims an undivided one-half interest therein; and asks to have said re-levy and re-assessment declared illegal and void, on the ground of the other adjudication, and of the unconstitutionality of the act of 1870, and the want of power in the defendants to act under it; and that the defendants may be perpetually restrained from all proceedings to collect or enforce the same. The defendant *Sharp* demurred to the complaint for defect of parties defendant, and for insufficiency. The court overruled the demurrer; and the defendant appeals.

*C. Coolbaugh & Son* for appellant, contend that the legislature has power to pass retrospective acts authorizing the re-assessment and re-levy of taxes or special assessments, where the former assessment and levy has been declared invalid, citing

*Morrison v. Springer*, 15 Iowa, 342 ; *May v. Holdridge*, 23 Wis., 92 ; Per. COLE, J., *Bushnell v. Beloit*, 10 id., 225 ; *Tallman v. City of Janesville* 17 id., 71 ; *Selsby v. Redlon*, 19 id., 17 ; *Dean v. Charleton*, 27 id., 522 ; *Cochran v. Van Surlay*, 20 Wend., 381 ; *Kirby v. Shaw*, 7 Harris, Pa. St., 258 ; *State v. Dawson*, 2 Hill (S.C.,) 100 ; *Harvey v. Thomas*, 10 Watts, 63 ; *Calder v. Bull*, 3 Dallas, 386 ; *Terrett v. Taylor*, 9 Cranch, 43 ; *Town of Guildford v. Cornell*, 18 Barb., 615 ; *Commonwealth v. McCloskey*, 2 Rawle, 374 ; Per Ch. J. MARSHALL, *McCulloch v. State of Maryland*, 4 Wheat., 316 ; Per C. J. TANEY, *Brewer v. Blougher*, 14 Pet., 198 ; *Oriental Bank v. Freeze*, 18 Me., 109 ; *Austin v. Stevens*, 24 id., 520 ; *Wires v. Farr*, 25 Vt., 41 ; *Plumb v. Sawyer*, 21 Conn., 351 ; *Patterson v. Philbrooke*, 9 Mass., 159 ; *Garrett, v. Beaumont*, 24 Miss., 377 ; *Trustees of Cuyahoga v. McKunghey*, 22 Ohio St., 152. The act of 1870 is not prohibited by any provision of the constitution. This is an assessment and not a tax, and the power to levy such assessments may be conferred upon cities by the legislature. *Hill v. Higdon*, 5 Ohio St., 244 ; *Weeks v. City of Milwaukee*, 10 Wis., 242, 260. 2. That act does not embrace more than one subject, within the meaning of section 18, art. IV. of our constitution, and that is sufficiently expressed in its title, "An act to authorize the City of Oshkosh to re-assess and collect certain taxes and assessments." Such a provision was held simply directory in *Miller v. State*, 3 Ohio St., 475 ; *Pim v. Nicholson*, 6 id., 179 ; *Washington v. Page*, 4 Cal., 388. The object of it was, not that the title should state minutely everything contained in the act, but that it should fairly disclose the *subject matter.* *People v. Mahaney*, 13 Mich., 494 ; *Walker v. Caldwell*, 4 La. Ann., 298 ; *Sun Mut. Ins. Co. v. Mayor, etc.*, 8 N. Y., 253 ; *State v. County Judge*, 2 Iowa, 282 ; *Davis v. State*, 7 Md., 151 ; Per HARRIS, J., *People v. McCann*, 3 Park., Crim. R., 299 ; *People v. Mellen*, 32 Ill., 181 ; *Whiting v. Mt. Pleasant*, 11 Iowa, 482 ; *Chiles v. Monroe*, 4 Met. (Ky.), 72 ; *Sturgeon v. Hitchens*, 22 Ind., 107 ; *Fishkill v. Plank Road Co.*, 22 Barb., 634 ; *Martin v. Broach*,

6 Ga., 21; *Conner v. Mayor, etc.*, 5 N. Y., 285; Per MARSHALL, Ch. J., Cooley's Cons. Lim., 141, note 4; *Belleville Railroad Co. v. Gregory*, 15 Ill., 20; *O'Leary v. Cook County*, 28 id., 534; *Dean v. Charleton*, 23 Wis., 609; *May v. Holdridge*, id., 98. Even if that part of section 2 of the act, which authorizes the city to order streets to be laid with "Nicholson pavement" does not come within the title, the whole act is not on that account void. *Slauson v. Racine*, 13 Wis., 398, 404, 406; Cooley's Cons. Lim., 148. In case of doubt as to the constitutionality of an act, courts should decide in favor of its validity. *Atty. Gen'l ex rel, Brayton v. Merriman*, 6 Wis., 14–22; *Smith v. Mariner*, 5 id., 551, 580; *In re Oliver*, 17 id., 681; *Dartmouth College Case*, 4 Wheat., 625; *Tyler v. The People*, 8 Mich., 333. The plaintiff having signed the petition for the pavement, is estopped from setting up the unconstitutionality of the act. *Embury v. Conner*, 3 N. Y., 511; *Baker v. Braman*, 6 Hill, 47; *People v. Murray*, 5 id., 468; *Lee v. Tillotson*, 24 Wend., 337; *Beecher v. Baldy*, 7 Mich., 488; *Chamberlain v. Lyell*, 3 id., 448. 3. The former judgment is no bar to proceedings for the collection of this assessment. *Tallman v. Janesville*, 17 Wis., 71; *Dean v. Charleton*, 27 id., 522, 4. If the original assessment was void for any non-compliance with the forms of the charter, that defect is cured by chap. 132, Laws, of 1868, and chap. 52, Laws of 1870; if for want of original power in the common council to order the work, that defect is cured by chap. 167, P. & L. Laws of 1870. The latter act authorized the council to re-levy this tax, and the amount is not claimed to be exorbitant. If their first exercise of the power was defective, they could cure the defect by a re-levy. They also had power to apportion the amount among the different parcels into which the land originally liable had been divided, that being made necessary by the division. That act, by authorizing the new assessment to be collected "in the same manner as other taxes or assessments," conferred the same authority upon the city and county treasurers as in other cases.

*Felker & Weisbrod*, for respondent, contend that there was no defect of parties. Neither of the contractors being necessary parties, the joinder of one does not render it necessary to join the other. *N. Y. and N. H. R. R. Co. v. Schuyler*, 7 Abb. Pr., 41; *S. C.*, 17 N. Y., 592; *Churchill v. Trapp*, 3 Abb. Pr., 306. 2. The decision in *Dean v. Charleton*, is conclusive against the authority of the common council to re-assess this tax under either chap. 167 Pr. and L. Laws, or chap. 52 Gen. Laws of 1870. The latter chapter confers no greater authority than chap. 132, Laws of 1868, unless it is by reason of the words " or for any other cause." Such statutes, being in derogation of the rights of the citizen, are to be construed strictly. Those words must be held to mean for any other cause of like nature or kind as those before expressed. 13 N. Y., 220, 228, 230; *Sandiman v. Breach*, 14 E. C. L., 22; *Casher v. Holmes*, 22 id., 146; *The King v. Water Works*, 8 id., 168; Sedgwick on Stat. and Con. Law, 423. This is not a case of irregularity at all, but one of entire want of authority and positive and open violation of law. The demurrer admits that the contract was not let to the lowest bidder. 3. If the power to re-assess existed at all, it was a mere naked power to re-assess the lands as originally described, correcting errors. The common council had no authority to assess the lot not abutting on Main street; nor to assess the land in parcels and fix the proportion which each lot should bear; nor to say what sum shall be assessed against any particular lot. 4. Chapter 52, Laws of 1870, cannot apply to the city of Oshkosh, inasmuch as it does not provide that it shall so apply, as is required by sec. 25, chap. XIII, charter of Oshkosh (chap. 501, Pr. and L. Laws of 1868).

DIXON, C. J. This is an action to restrain proceedings upon a re-assessment to pay for a Nicholson pavement laid down in one of the streets of the city of Oshkosh, the original assessment for which had failed and been set aside for the same reason as in *Dean v. Charleton*, 23 Wis., 590, and *Mills v. Charleton*,

*ante* p. 400. As in the latter case, so in this, the plaintiff had obtained a judgment perpetually enjoining proceedings upon the original assessment, before the act authorizing the re-assessment was passed. That act (ch. 167, P. & L. Laws of 1870) is also a verbatim copy, as well with respect to the title as the text, of the act considered in the *Mills case,* with only the name "Madison" omitted and "Oshkosh" inserted, so as to make the act applicable to the latter city. The questions of constitutional law here presented are, therefore, the very same as those involved in that case, and the judgment there is decisive of them. We revert to those questions now merely for the purpose of referring to some authorities which directly sustain our conclusions, but which were then unknown to us.

The constitution of the state of New Jersey declares that "every law shall embrace but one object, and that shall be expressed in the title." In *Gifford v. New Jersey Railroad Company,* 2 Stockton, 172, it was held that an act entitled "A Supplement to the Newark and Bloomfield Railroad Company," which authorized said company to construct a bridge over the Passaic river, and connect by a branch with the New Jersey Railroad by agreement with the latter company, and which also authorized the New Jersey Railroad Company to build such branch road, did not contravene the provisions of the constitution. In his opinion the chancellor says: "The design of this provision is declared to be, to prevent improper influences, which may result from intermixing in one and the same act such things as have no proper relation to each other. The objects in that statute, however, are parts of the same enterprise, and cannot be said to have any improper relation to each other."

In *The State ex rel. Walter v. Town of Union,* 33 N. J. Law R. (4 Vroom.) ,350, the act was entitled, "an act to amend an act to incorporate the town of Union in the township of Union, in the county of Hudson, approved March 29, 1864." The sole object of the act was to cure defects in the proceedings

taken by the councilmen of the town of Union for the con-
struction of a certain sewer ; and the act, after reciting the or-
dinance to authorize the construction of the sewer, by its title
and date of passage by the councilmen, proceeded to validate
the same, and all proceedings had under it, as fully as if every
provision of the town charter had been complied with ; and it
also provided that no *certiorari* should be had or maintained to
set aside the same. The act was adjudged valid by the court,
who remark of the constitutional provision that its object is
"to prevent surprise upon legislators by the passage of bills the
object of which is not indicated by their titles, and also to pre-
vent the combination of two or more distinct and unconnected
matters in the same bill." The court also observe: " A like
provision in the several state constitutions has been *liberally*
construed by the courts so that its beneficial purposes might
be secured without embarrassing legislation." Reference is
made to the decisions in other states expressing the same views,
and the opinion proceeds :

" The following will be found to be the result of adjudicated
cases in those states where the constitutional provision does
not differ materially from our own.

" It is not intended to prohibit the uniting in one bill of any
number of provisions having one general object fairly indicated
by its title.

" The unity of the object must be sought in the end which
the legislative act proposes to accomplish, and not in the details
provided to reach that end. The degree of particularity which
must be used in the title of an act, rests in legislative discre-
tion, and is not defined by the constitution. There are many
cases where the object might with great propriety be more spe-
cifically stated, yet the generality of the title will not be fatal
to the act, if by fair intendment it can be connected with it.
2 Vroom, 136; 19 N. Y., 116; 7 Ind., 684; 8 N. Y., 253; 4
La. Ann., 298; 13 Mich., 495.

" The validity of acts with general titles has been so long

recognized by our courts, that it cannot now be questioned that under the title ' An act to incorporate the town of Union,' a government for the town could be established, including taxation for its support, courts for the trial of offenders, authority for laying out streets, building sewers, and making assessments. Under any other rule it would be impossible to organize a city government without a large number of distinct acts. If under that general title, the formalities of building a sewer and making the assessments may be prescribed, there is no reason why a dispensation from the use of the required forms may not be granted by an act entitled ' An act to amend an act to incorporate the town of Union.'

" If this objection was sustained, it would annul a large portion of the legislation of this state, and render future legislation very difficult. The construction claimed by the plaintiffs is not warranted."

In a still later case in the same court, *The State ex rel. Doyle v. The Mayor and Common Council of the City of Newark*, 34 N. J. Law R. (5 Vroom.), 236, the decision is correctly stated in the notes of the reporter as follows: " The act of the 15th of April, 1868, entitled, ' A further supplement to the act entitled, *An act to revise and amend the charter of the city of Newark, approved March 11th*, 1857', the first four sections of which refer to an assessment theretofore made by the defendants, for certain improvements made in said city, and which, on account of certain informalities and defects in the proceedings, could not be collected, and provide for a new assessment, in a manner therein set forth, and for other assessments of a like character, the fifth section confers certain powers upon the common council in reference to laying out and opening streets and squares, and the sixth section fixes the time within which the tax lists shall be delivered to the receiver of taxes and auditor of accounts, and requires the receiver of taxes to deliver to the city treasurer the list of taxes, after the final returns of the collector of arrears shall have been made in each year. *Held*, That the act had but a single object,

which was to make an amendment or addition to the city charter, whereby certain defects found to exist therein might be remedied; that the object was sufficiently expressed in the title and that the act does not contravene that section of the constitution which provides that every law shall embrace but one object, and that such object shall be expressed in the title."

The constitution of Maryland provides that "every law enacted by the general assembly shall embrace but one subject, and that shall be described in the title." In *Mayor etc. of Annapolis v. State of Maryland,* 30 Md., 112, the act under consideration was entitled "an act to amend and alter the charter of the city of Annapolis," and in it among other things, it was provided, "that all acts, deeds or ordinances of the mayor, etc., of Annapolis, theretofore made, done, executed or passed in reference to the closing or discontinuance of any street, lane or alley in said city, was thereby declared and made operative and valid in the same manner as if the said mayor, etc., had had full power and authority to do the same, at the respective times when the same were severally done." The court held that the act was in accordance with the provision of the constitution above quoted, and in the opinion it is said: "The subject matter of legislation, was the charter of a municipal corporation, embracing its powers, rights and duties. In the first section the boundaries of the city are defined, power to open, alter and discontinue new streets conferred; and can it be said, that a clause ratifying acts and ordinances already done and passed by the corporation, in the closing or discontinuance of a street, is *foreign* to the subject matter as declared by the title? That it can be considered as a blending of different and independent subjects in the same law? We think not. And whilst it is the duty of the court to place such a construction upon this constitutional provision, as shall guard against the mischiefs intended by it to be remedied, reason and sound policy demand that we shall not, by a technical interpretation, embarrass legislation, and encumber laws with long and prolix titles."

The foregoing decisions sufficiently exemplify and sustain the correctness of our former decision as to the sufficiency of the title of the act. We make a note, however, of the following in addition. *People v Lawrance*, 41 N. Y., 137; *Fletcher v. Oliver*, 25 Ark., 289; *State v. Lovey*, 21 La. Ann., 538; *City Nat. Bank v. Mahon*, id., 751; *People v. State Ins. Co.*, 19 Mich., 392; *State v. Bank of the State*, 45 Mo., 528; *State v. Miller*, id., 495; *State v. Deitz*, 30 Texas, 511.

And the case of *State ex rel. Doyle v. The Mayor, &c., of the City of Newark*, is also in point upon the other objection, that the act is a legislative usurpation of judicial powers, so far as it authorizes a re-assessment in cases where the prior assessment had been declared void by the judgment of a court. That was a case of the kind, and upon this case the court say: "The next objection is, that the act of 1868 is unconstitutional and void, because it is an invasion of the legislature upon the judiciary. The contention is, that this court having, in 1863, set aside the assessment made against the prosecutor for the improvement in question, the judgment then pronounced cannot be nullified or rendered inoperative by act of the legislature. The legal proposition is undoubtedly correct. The judgment of a court of competent jurisdiction cannot be reversed, avoided, or set aside by the legislative power. The question here is, whether the act of 1868, properly considered, has the effect ascribed to it. It must be borne in mind that the act does not revive or attempt to render valid the assessment which the court has declared illegal and set aside. It simply orders a new and independent assessment to be made, to collect moneys which the city had expended for the benefit of the prosecutor and others. It leaves the judgment of this court upon the first assessment untouched. Its effect is not to nullify the judgment of this court, but to re-imburse the city by means of a subsequent assessment—to compensate a municipality for benefits conferred. An act of this description is a clear exercise of legislative power, whether it authorizes the

assessment to be made at the time when, or after the benefits are conferred.

And the same question was presented and ruled in the same way in *Howell v. The City of Buffalo*, 37 N. Y., 267. That was a case of re-assessment to defray the expenses of grading and paving a street under an act authorizing it, which act was passed after prior proceedings for that purpose had been adjudged illegal and void by a court of competent jurisdiction. Having remarked that the act did not undertake to interfere with the legal relations existing between the parties with respect to the first assessment, and by virtue of the former judgment, the court say: " The decision of the court declaring that charge unauthorized and void was not overruled, nor in any manner interfered with; and there has been by the legislature, in the passing of the act, no encroachment in any way, upon the functions of the judiciary. It is simply an exercise of the taxing power in a mode, as we have seen, within the constitutional scope of legislative authority, induced, it is true, by the failure of the former proceedings, but in no other sense retrospective, and in no objectionable sense retroactive. It does not reach back and attempt to legalize the tax which was illegally imposed, and by the court declared void, but does precisely what might have been done if there had been no previous attempt on the part of the city to collect the expense of the improvements out of the property benefited."

The other question presented, as to whether the re-assessment should have been made only upon the lots now known as 19 and 20, which are those fronting upon Main street and adjacent to the improvement, that being the street which was graded and paved, or whether it was properly made upon the three lots now known as 19, 20 and 21, seems not material to be considered in this case. In 1866, at the time the street was graded and paved and the first assessment was made or attempted to be, the three lots were known and described in the assessment roll as the north 94 feet of lot 1, block 40. At that time the plain-

tiff was the owner of the entire premises. In 1870, when the re-assessment took place, the premises had been subdivided so that lots 19 and 20 constituted the west half, fronting on Main street, and lot 21, the east half, fronting on Jefferson avenue, the next parallel street east. In 1870, also, it appears that the plaintiff had sold and conveyed, with the usual covenants of warranty and against incumbrances, lot 20 to one person, and the south 20 feet, front and rear, of lot 19 to another person; but that of the residue of lot 19, and the whole of lot 21, he remained and still continues the owner. It thus appears that the plaintiff is the person ultimately liable for the payment of the entire sums re-assessed. *Peters v. Myers*, 22 Wis., 602. It is in that character that he has commenced and prosecuted this action. It is wholly immaterial to him, therefore, whether the re-assessment was made only upon the two front lots, or upon the three. He was bound to pay all the taxes, whichever way the re-assessment was made. If it was made only on the lots fronting on Main street, he was bound to do so by virtue of his covenants to the purchasers of a portion, and as being himself the owner of the remainder. And, now that the burden is divided and put upon the three lots, that in the rear, still belonging to him, he is certainly in no worse condition. His liability remains the very same, and we do not see how he can complain, especially in the absence of any suggestion or statement of particular facts showing that he has or will suffer injury.

The demurrer to the complaint should have been sustained; and the order overruling it must be reversed, and the cause remanded for further proceedings according to law.

*By the Court* — So ordered.