Rork, by guardian ad litem, vs. Smith and others.

---

Rork, by guardian *ad litem*, vs. Smith and others.

*April 5 — May 10, 1882.*

Judgment. *(1) Who bound by judgment in* mandamus.
Cities: Street Assessments. *(2) How expense of improving street made chargeable on adjoining lots. (3, 4) Limitation of right to reässess under ch. 71 of 1874.*

1. The owner of a city lot, not being made a party to a proceeding by *mandamus* to compel the common council of the city to levy a special tax or assessment thereon, is not bound by the judgment in such proceeding.
2. Under the charter of the city of Appleton the common council could not let a contract for grading and grubbing a street so as to make the expense thereof chargeable upon adjoining lots, without first giving notice to the lot-owner, requiring him to do the work, as provided in said charter; nor could it make such lots chargeable for work done by the contractor not in accordance with the plans and specifications to which his contract refers, as for a sum allowed him by the council by way of compromise for work not accepted as, nor constituting in fact, a fulfilment of his contract.

Rork, by guardian ad litem, vs. Smith and others.

3. Where work was done under contract on a street in said city without previous notice to lot-owners to do it, and was not done in accordance with the plans and specifications adopted by the city, no tax or legal charge for such work being created against the adjoining lots, the council took no power to *reässess* the amount upon the lots under ch. 71, Laws of 1874.

[4. Whether, if there had been a mere want of notice to the lot-owners, and it clearly appeared that the work had been done in all respects in accordance with the plans and specifications adopted, and that the amount charged was only a fair and just compensation for the work, such amount might be reässessed upon the lots under the statute, not considered.]

APPEAL from the Circuit Court for *Outagamie* County. The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to restrain the collection of a special assessment made upon the real estate of the plaintiff, situate in the city of Appleton. The assessment is claimed to have been made to pay in part for grading a street in front of said real estate by the direction of the authorities of said city. It appears from the record that the work on the street in front of the plaintiff's lot was done in 1873, under a contract made with said city, by one Peter Berg, on or about the 25th of August, 1873; that Peter Berg assigned his contract to one J. E. Harriman; and that the work was done by Harriman under the direction of *Reeder Smith*, one of the defendants, and the present owner of the claim for which the assessment was made. It appears that the contract with Berg was entered into by the city without authority of law, for the reason that no notice had ever been given to the owner of the lot in question to do the work, as required by the charter of said city, previous to the letting of the contract to said Berg. It also appears that the work was not done in accordance with the contract, and that the contract was never in fact performed by the said Berg or by his assignee, Harriman, but that, under the direction of said *Reeder Smith*, the work was performed only partially, and so far as

it was performed it was not according to the plans and speci-
fications mentioned in the contract, and which had been
adopted by the city authorities; that the proper officers of
said city refused to accept the work done under said contract
as a full performance thereof; and that afterwards the com-
mon council of said city made a compromise of the matter
with the said Harriman, by which Harriman was allowed the
sum of $81.11 upon his contract as a charge against said lot
for the work done by him, such amount being about one-half
of the amount he would have been entitled to charge against
said lot had the work been performed as required by said
contract, if said contract had been lawfully entered into be-
tween the city and Berg. Upon such settlement, the com-
mon council, on the 21st day of November, 1874, ordered
a special assessment to be made on the plaintiff's lot for the
said sum of $81.11, and afterwards the city clerk inserted
said amount as a special tax upon the tax roll for said year
against the plaintiff's lot. It also appears that such special
tax was not collected, nor returned uncollected to the county
treasurer, in 1875, but was so returned in 1876; that before
any sale was made by said county treasurer of said lot for
said uncollected special tax, the plaintiff commenced an ac-
tion in the circuit court for Outagamie county, against the
board of supervisors of said county and the then treasurer
thereof, to restrain them from selling said lot for the payment
of said special tax, and to have said special tax declared ille-
gal and void; and that final judgment was rendered in such
action on the 22d day of November, 1876, declaring said
special tax void, and perpetually enjoining and restraining
the defendants from selling said lot for the payment of said
tax.

" Afterwards *Reeder Smith*, who had become the owner of
said certificate, petitioned the common council of said city to
reässess and relevy said special tax upon the said lot of the
plaintiff, and the common council refused to order the same

to be reässessed and relevied; and thereupon *Smith* applied to the circuit court to issue its writ of *mandamus*, directed to said common council, commanding them to relevy and re-assess said special tax; and such proceedings were had upon said writ that afterwards, on the 4th day of June, 1878, said circuit court rendered final judgment in such proceeding, awarding a peremptory *mandamus* against said common council, commanding them to reässess and relevy said special tax of $81.11 upon the said property of the plaintiff. In obedience to said writ the common council, at a meeting thereof held on the 13th day of November, 1878, adopted a resolution relevying and reässessing said special tax of $81.11, and ordered the city clerk to insert the same in its proper place on the tax roll of said city for 1878. In pursuance of said resolution, such special tax was inserted in the tax roll of said city as a tax against said lot of the plaintiff, and was delivered to the city treasurer for collection. The plaintiff paid all other taxes levied and assessed on said lot for the year 1878, but refused to pay the special tax of $81.11, and the same was returned to the county treasurer as a delinquent tax on said lot. The present action was commenced on the 12th of May, 1879, to restrain the county treasurer from selling said lot for the payment of said special tax, and to obtain a perpetual injunction against said county treasurer restraining him from the sale thereof.

"The facts as above stated are substantially as found by the court upon the trial of this action, and are undisputed. Upon these findings of fact the circuit court held as conclusions of law: '(1) That the defendant *Reeder Smith*, being, at the time the first action was commenced to vacate said special tax, the owner and holder of said street certificate, and not having been made a party to said action, is not bound by the judgment rendered therein. (2) That the plaintiff herein not having been made a party defendant in the suit or action for *mandamus*, as aforesaid, he is not bound or affected by

Rork, by guardian ad litem, vs. Smith and others.

the judgment therein rendered.   (3) That said tax or assessment of $81.11, as reässessed and relevied, is legal and binding, and is not affected by previous defects and irregularities. (4) That the complaint in this action must be dismissed. (5) That defendants are entitled to judgment dismissing this action, and for their costs and disbursements herein.'

"The plaintiff excepted to the third, fourth and fifth conclusions of law, and to a part of the first, second and third findings of fact.   From the judgment dismissing the complaint, with costs, the plaintiff appealed to this court."

For the appellant there was a brief by *Collins & Pierce,* and oral argument by *Mr. Pierce.*   They argued, *inter alia,* that an order authorizing the work to be done should have been made by the common council in the first instance. Sec. 4, subch. 7, ch. 268, Laws of 1865; *Johnston v. Oshkosh,* 21 Wis., 186; *Canfield v. Smith,* 34 id., 381; *Pound v. Supervisors of Chippewa Co.,* 43 id., 63; *Hall v. City of Chippewa Falls,* 47 id., 267.   No notice was given to the owner of the land to do the work, as required by sec. 11, ch. 387, P. & L. Laws of 1870.   The certificate was issued by the city clerk against plaintiff's land without any proof from the street commissioner that a lien had accrued as required by sec. 5, ch. 387, P. & L. Laws of 1870; and no report was made by the city clerk to the common council before the levy of the tax, verified by his affidavit, as required by said section. These are jurisdictional defects, and not mere irregularities. *Pound v. Supervisors, supra; Dean v. Charlton,* 27 Wis., 522. No presumption will be indulged in favor of the correctness of official action of the common council.   Their authority must be clearly and positively shown.   *Eldred v. Leahy,* 31 Wis., 546; *Canfield v. Smith,* 34 id., 381; *Massing v. Ames,* 37 id., 645.   The work not having been done as required by the contract, the defendant *Smith* is not entitled to any pay therefor.   *Bonested v. Mayor of New York,* 6 Bosw., 550; *S. C.,* 22 N. Y., 162.

*W. J. Allen*, for the respondents, argued, among other things, that the judgment in the *mandamus* suit, adjudging the reässessed tax valid, is binding not only as against the parties to that suit, but also as against all others. A judgment against a county or its legal representative in a matter of general interest to all the people thereof, is binding not only on the official representatives of the county named in the proceedings as defendants, but upon all the citizens thereof, though not made parties defendant by name. *Clark v. Wolf*, 29 Iowa, 197. Not only parties but privies are bound by a judgment; and by privies are meant persons who are represented by the parties and claim under them, who have mutual or successive relationship to the same right or thing. *Goddard v. Benson*, 15 Abb. Pr., 191; *Manly v. Kidd*, 33 Miss., 141; *Johnson v. Weld*, 8 La. Ann., 126. When the court has deliberately examined and settled a legal question in one suit, it will not afterwards listen to an argument of the same question, although it arises in another suit between different parties. *Teal v. Woodward*, 3 Paige, 470; *Kearney v. Butler*, 1 Ohio St., 362; *Alexander v. Worthington*, 5 Md., 471. Judgments *in rem* are binding not only upon parties and privies, but also upon strangers. *The Mary Ann*, 2 Ware, 103; *The Globe*, 2 Blatch. C. C., 427; *State v. Central Pacific R. R. Co.*, 10 Nev., 47. Whenever a tax is attempted to be levied for lawful purposes, and fails of collection through any defect or want of legality, it may be reässessed under legislative authority. *Tallman v. Janesville*, 17 Wis., 71; *Cross v. Milwaukee*, 19 id., 509; *May v. Holdridge*, 23 id., 93; *Mills v. Charleton*, 29 id., 400; *Dill v. Roberts*, 30 id., 178; *Marsh v. Supervisors*, 42 id., 503. In relation to the validity of reässessments, there is no distinction between general and special taxes. *May v. Holdridge, supra.*

TAYLOR, J. On the part of the appellant it is contended that the common council had no power to charge his lot with

Rork, by guardian ad litem, vs. Smith and others.

the payment of this alleged special tax in the first instance, or by way of a reässessment or relevy thereof. This raises two questions: 1. Was the original assessment authorized by law? 2. If it was not, was the judgment of the circuit court commanding the common council of said city to reässess and relevy the same an erroneous judgment?

It will be seen, by an examination of the decision of the learned circuit judge, that he does not in his conclusions of law express any opinion upon the question as to the legality or validity of the tax as originally assessed upon the property of the plaintiff. He simply holds that the first judgment setting aside the tax and enjoining its collection is not binding upon the defendant *Reeder Smith*, because he was not a party thereto, and was at the time the owner of the claim for the payment of which the tax was assessed; and he also holds that the plaintiff was not bound by the *mandamus* proceedings, because he was not a party thereto. In both these conclusions of law we are of the opinion the learned circuit judge was clearly right. In the case of the *mandamus* proceedings it seems to us very clear that the common council did not represent the rights of the plaintiff. The proceeding was a direct proceeding to charge the plaintiff's property with the payment of a claim owned by the defendant *Reeder Smith*, and which he claimed was chargeable to and payable out of the property of the plaintiff. The plaintiff was the only one interested in resisting the claim of *Smith;* and if he can be barred of his right to contest the validity of the charge by a proceeding to which he is not a party and of which he has legally no knowledge, it would seem to be contrary to the well settled rule of law that no person is bound by any judgment in an action to which he is not a party unless he claims his right under some one who was a party thereto. This case cannot be governed by the rule which binds all the tax-payers of a municipality by the judgment of a court of competent jurisdiction declaring that

the claim of the party against it is a valid claim. In the case of a claim made against the city, town, county or other municipality, the claimant cannot make the tax-payers, to whose property he must ultimately resort for the payment of his claim, parties to his action to determine its validity; and the municipality in its corporate capacity is the party with which the contest must be made. In an action of that kind the municipality, by its officers, represents the rights of the tax-payers whose property must ultimately pay the demand. The claim, in such case, is a claim against the municipality and not against the tax-payers; but when established against the municipality, the property of the tax-payer becomes bound to pay his quota of the tax necessary to discharge the debt. This is all that was determined in the case of *Clark v. Wolf*, 29 Iowa, 197, cited by the learned counsel for the respondent. In the case at bar, *Smith* had no claim against the city of Appleton; he had simply the right, if he had any right, to invoke the action of the city authorities to aid him in enforcing his claim against the property of the plaintiff; and the fact that he compelled them to act by the writ of *mandamus* can give no more force to their action than if it had been done voluntarily, unless the party to be affected by their action was also made a party to the proceeding. They were the mere agents of the holder of the claim to enforce it against the plaintiff; and if they had no legal right to enforce the claim, the plaintiff must have the right to contest its validity when the attempt to enforce the same is made in a way which affects his rights.

Although the learned circuit judge did not find, as one of his conclusions of law, that the special assessment was illegal and void when originally levied upon the plaintiff's property, and that the former judgment vacating the same, and perpetually enjoining the collection thereof, was a proper judgment under the proofs, yet he finds, under the head of findings of fact, in the fifteenth finding, as follows: "Although

the work contracted to be done and performed by Peter Berg as aforesaid was not fully and completely performed by said Harriman, his assignee, yet said Harriman was only paid or settled with for the amount of work actually performed; and the court finds that there was no fraud in any of the foregoing enumerated proceedings, and the land of the plaintiff aforesaid was properly assessable, and the sum mentioned in said street certificate, to wit, $81.11, was a proper amount which should have been assessed against said land had all the proceedings been regular, and the same on reässessment became legal, regular and binding, and all previous irregularities and defects do not affect its validity."

This finding, which is a mixture of fact and law, by implication, at least, finds that the original assessment was irregular and void, and was properly enjoined, but in effect holds that because there was no fraud in fact perpetrated or intended either by the contractor or the council, and because the value of the work done on the street amounted to the sum of $81.11, it was properly reässessable upon the plaintiff's land. The facts in the case are briefly these: (1) On the 8th of July, 1873, the common council passed a resolution directing the city engineer to furnish plans and specifications for grubbing, grading and ditching the street in question, and directing the city clerk, immediately after the same should have been placed on file, to order the completion of said work within ten days. (2) On the 13th of August, 1873, the clerk was directed to advertise for sealed proposals for grading, grubbing and ditching such street according to plans and specifications on file. (3) On the 23d of August, 1873, a contract was entered into with Peter Berg for grading and grubbing said street. (4) On the 27th of May, 1874, the common council passed a resolution annulling such contract for nonfulfillment thereof. (5) The work was not done according to contract as to the amount of work to be done, nor according to the plans or specifications adopted by the

council. (6) The clerk of the city, without any apparent direction of the common council of said city, and after the passage of the resolution annulling the contract under which the work was done, issued a certificate to J. E. Harriman, the assignee of the Berg contract, certifying that he had done work to the amount of $81.11, which was chargeable to the said plaintiff's land; and on November 21, 1874, the clerk made a report to the common council of said city in writing, with a schedule of lots and lands subject to special taxes and assessments to be levied against said lots and lands, and in such schedule was included the land of the plaintiff charged with the said special assessment of $81.11 for grading under the contract with Peter Berg. Thereupon the common council, by resolution duly entered in their minutes, assessed against said real estate of the plaintiff the said sum of $81.11 as a special tax for the work done under said Berg contract. (7) The said special tax was inserted in the tax roll for said year as a tax on said plaintiff's land. (8) The amount of said special tax, it seems, although the evidence is not very clear on that point, was agreed upon by the said Harriman, who did the work, and some of the officers, as a compromise and settlement for the work done under the Berg contract.

Upon this point the learned circuit judge found as follows: "When Harriman had completed the job, the city surveyor refused to accept the same, claiming that the work was not done in accordance with the plans and specifications; and afterwards the said city surveyor made a survey and estimate of the quantity and amount of the work left undone on said job. This was made under the order of the common council of the city of Appleton; and afterwards the city of Appleton, by its officers, accepted the job, and settled for it, *by way of compromise*, by allowing therefor an amount equal to the amount and quantity of work done thereon, as estimated by the city surveyor; and on this basis the common

council of the said city of Appleton ordered certificates and orders to be issued by the city clerk, and among the certificates and orders so issued was the one described in the complaint against the plaintiff's land, for $81.11, bearing date November 21, 1874. If the work had been fully completed at the contract price of 35 cents per cubic yard instead of 25 cents, as estimated by the city surveyor, then 888 yards, and excavating at 35 cents, is $310.80, one-half of which is $155.40, and add $30.50 for grubbing, making the sum $189.90, as chargeable to the plaintiff's land; instead of which amount the plaintiff's land was only charged with $81.11, the estimated amount of work done only."

This finding was excepted to by the appellant, and whether it is sustained in its entirety by the proofs, it is difficult to determine from the evidence presented to us. We think, however, it is substantially sustained in its material facts. This tax so assessed upon the plaintiff's land was set aside, and its collection enjoined, in the plaintiff's action against the county and its treasurer, by the judgment of the circuit court, November 22, 1876.

This judgment was undoubtedly correct, for at least two reasons: (1) Because the city clerk did not give any notice to the owners of the lots which were to be charged with the cost of grading, grubbing and ditching, requiring them to do the work within a reasonable time, before advertising for proposals for contracts to do the work, as required by section 5, subch. 7, ch. 268, Laws of 1865, as amended by section 11, ch. 287, P. & L. Laws of 1870. (2) Because there is no pretense that the special tax was assessed upon the plaintiff's land in payment for work done in grading, grubbing and ditching the street in question, according to the plans and specifications adopted by the common council in relation thereto. On the contrary, the evidence clearly shows that the work was not done in accordance with the plans and specifications so adopted, nor in compliance with the contract

made by Berg with the city for doing such work. Nor is there any evidence tending to show that the grading, grubbing and ditching on said street has ever been done and completed according to the plans adopted by the common council for doing the same; and the fair inference from the whole evidence is that it never has been completed, but has been abandoned by the city. The tax was assessed to pay one-half a sum which was the estimated value of the work done on the street by the assignee of Berg, not in accordance with the terms of his contract, nor according to the plans and specifications adopted by the common council for grubbing, grading and ditching said street, but in violation and disregard of both. Under the charter of the city of Appleton, the common council had no authority to let any contract for grading and grubbing the street in front of plaintiff's lot, until notice had been first given to the owner requiring him to do the same as required by said section 5, subch. 7, above cited. The want of this notice was a jurisdictional defect, and renders all subsequent proceedings void. This court so held in the case of *Johnston v. City of Oshkosh,* 21 Wis., 184. The late learned Chief Justice Dixon, in his opinion in that case, says the want of such notice "is an insuperable objection to the validity of the taxes for the nonpayment of which the deed was executed. The street commissioners had no power to enter into a contract without having given the notice." He cites *Kneeland v. Milwaukee,* 18 Wis., 411. The charter of the city of Oshkosh is substantially the same as that of Appleton upon the subject of giving notice to the owners before letting contracts. See section 6, subch. 7, ch. 133, P. & L. Laws of 1856. Upon the point whether the giving of such notice should be deemed merely directory under the provisions of said charter, section 19, subch. 18 of said chapter 133, which provides that " all directions given in the charter for the assessing of lands, and the levy and collecting of taxes and assessments,

shall be deemed only directory, and no error or informality in the proceedings of any of the officers entrusted with the same, not affecting the substantial justice of the tax itself, shall vitiate or in any wise affect the validity of the tax or assessment," the learned chief justice said: "It is contended for the plaintiff that the giving of the notice is only directory, and that the omission does not avoid the tax. It is obvious that the provisions of this section do not apply to the notice, but are intended to govern the proceedings of the officers after the debt or liability for which the taxes are assessed or levied has once been lawfully created. Without any debt or liability the very groundwork of the tax is wanting, and there can be no valid assessment or levy. As well might the municipal authorities attempt to assess or levy a tax without any improvement having been directed at all, or without its having been made. But if this section does apply to the notice, it is still within the exceptions contained in the section itself. Every one having had the slightest experience in such matters knows that the right reserved to the owners and occupants to make the improvements themselves is a substantial right, and one which cannot be dispensed with without very great danger of oppression and injustice."

The doctrine of this case has been affirmed by this court in *Canfield v. Smith*, 34 Wis., 381; *Pound v. Supervisors*, 43 Wis., 63; *Hall v. City of Chippewa Falls*, 47 Wis., 267; *Massing v. Treasurer of Dane County*, 37 Wis., 645; *State ex rel. Flint v. Fond du Lac*, 42 Wis., 287.

The second objection to the assessment seems equally fatal to its validity. Under the charter the city authorities have the power to impose a charge upon the real estate of its citizens for the purpose of improving its streets, in favor of the person who does the work in making such improvement. In most cities the whole cost of the improvement is chargeable to the lot fronting the street improved. In the city of Appleton but one-half the cost is so chargeable. To make

Rork, by guardian ad litem, vs. Smith and others.

such charge a valid tax or claim on the property of the cit-
izen, certain prerequisites are necessary. The proper city
authorities must first determine that the improvement
shall be made; then they must determine the plan upon
which it shall be made, so that an estimate of its cost can
be made; and an estimate of such cost must be made; then
notice to do the work must, as we have seen, be given to the
owner; and if, after such notice, he fails to do the work,
the work must be advertised and let to the lowest bidder.
A contract must be entered into with such bidder binding
him to do the work according to the plans and specifica-
tions; and when the work is done according to such plans
and specifications, then, and not till then, the land of the
citizen may be charged with his share of the cost of such
work.   If, after going through all this work, and after letting
the contract, the contractor may refuse to do the work in
accordance with the plans and specifications adopted by the
proper authorities, and may do the work according to a plan
of his own, and refuse to perform his contract, and still
charge the citizen with the value of the work done, if he is
fortunate enough to get the consent of the authorities of the
city to recognize his plan of doing the work, and get them
to levy a tax to pay him therefor, then none of the require-
ments of the statute directing how the streets may be im-
proved are of any binding force, and every real estate owner
will be at the mercy of the city officials, and may be com-
pelled to pay for any work which another citizen may see
fit to do upon the street in front of his property. If this
can be done, then that will have been accomplished in fact
which Chief Justice DIXON exclaimed against as absurd in
the language above quoted. " As well might the city author-
ities attempt to assess or levy a tax without any improvement
having been directed." It is clear, from the evidence and
findings in this case, that the improvement, as made by the
contractor, was never directed by the city authorities, and if

the owner must pay for work done, not in execution of the plan adopted by the city, but in execution of a plan adopted by the person doing the work, then he is compelled to pay for an improvement never directed by the city. We do not think a charge of this kind should be tolerated. Every contractor who does work in improving or grading a street in a city where the cost of said improvement or grading is chargeable to the owners of the abutting lots, and where he is compelled to resort to a special assessment upon such lots for his pay, or any portion thereof, must see to it that the proceedings of the city authorities in directing the same are regular, in those matters at least which are essential. The authorities are in some sense his agents in fixing the charge upon the adjoining property for his benefit, and if they proceed irregularly he is to suffer from such irregularity; and especially he should suffer when he causes the irregularity himself by neglecting or refusing to carry out the plan of the improvement adopted by the authorities, and which, by his contract, he agreed to carry out.

It being clear that the original tax was irregular and void, it only remains to be seen whether there was any authority for reässessing and relevying the same under the provisions of chapter 71, Laws of 1874. This chapter, so far as it gives the power to reässess and relevy a tax which has been declared void for some irregularity, is substantially a reënactment of chapter 132, Laws of 1868, as amended by chapter 52, Laws of 1870, with the following words of limitation inserted, which were not found in the previous chapter, viz.: "if the lands were properly assessable, and the tax was the proper amount which should have been assessed against such lands." If the word "assessable," in the above limitation, means chargeable with the particular tax sought to be reässessed and levied thereon, as we think it clearly does, then we are very clear that this sum of $81.11 could not be lawfully reässessed thereon, for the reason that said

sum never was a tax chargeable to said lot. We think it is also excluded by the other limitation that the tax set aside and sought to be reässessed *was the proper amount which should have been originally charged to said lands.* As we have said above, the city authorities have no power to charge the plaintiff's land with any amount as a special tax for doing work in grading the street in front of his lot, unless such grading was done in substantial accordance with plans and specifications previously adopted by the city authorities. There is no power vested in the city authorities to charge a lot owner with the cost of work done on the street in front of his lot, except when it is done in the execution of some plan previously adopted for the improvement thereof. We are very clear that this statute was never intended to, and does not, authorize the city authorities to charge the owner of real estate with a special tax for the benefit of a contractor who has refused and neglected to perform the work contracted to be done in accordance with his contract, by way of a reässessment. When it appears that the charge sought to be enforced as a special tax is in no sense a charge upon the land of a citizen, and it has been set aside and enjoined for that cause, it cannot be converted into a lawful charge by the process of reässessment. Such a case does not come within the meaning of the reässessment act. The difficulty with this charge sought to be relieved as a special tax is something more than an irregularity or an omission to comply with the forms of law within the meaning of said statute. There is, in fact, no tax to be reässessed or relieved.

If there had been no other irregularity in this case except the want of the notice to the owner of the property to do the work before the contract was let, and the evidence had clearly shown that the work had been done in all respects in accordance with the plans and specifications adopted by the proper authorities, and that the amount charged for the performance of the work was a just and fair compensation

therefor, I am not prepared to say that it might not have been properly reässessed upon the plaintiff's land under the statute; but the facts in this case do not present that question for our consideration. The right to reässess a tax under the provisions of chapter 132, Laws of 1868, as amended by chapter 52, Laws of 1870, has been considered in this court in the cases of *Dean v. Charlton, Treasurer*, 23 Wis., 590, and *Dean v. Charlton, Treasurer*, 27 Wis., 522. In the first case, the late learned Justice Paine, in considering the question whether the tax declared void in that case could be reässessed under the provisions of said chapter 132, Laws of 1868, used the following language: "The position is based upon the provisions of chapter 132 of the general laws of 1868. But that merely provides that where any taxes or assessments have been set aside or declared void by any court in consequence of any irregularity or neglect to comply with the law in the proceedings, it may be afterward reässessed. It applies, therefore, obviously only to such taxes *and assessments as were authorized by law*. Where there is any irregularity or defect in assessing these, they may be reässessed. But it would be a strange use, or abuse, of such a statute to say that it would extend to the assessment of a tax which was defective, not on account of mere irregularity in the proceedings, but for an entire want of authority. That is the ground of the objection to the tax here in question, and this statute has, therefore, no application to it."

In the second case, Justice Lyon, in commenting upon the same law, as well as upon chapter 316, P. & L. Laws of 1869, says in reference to chapter 132, Laws of 1868, that it only authorizes a reässessment (1) for any irregularity in any of the proceedings in levying the same; and (2) for any omission to comply with the forms of law under which it was levied or assessed; and then, in speaking of the power to reässess the tax set aside in that case, he uses the following language: "They were not set aside merely because of any

such irregularity, omission, or non-compliance, or for any other more non-feasance, but for a palpable misfeasance; for a plain violation of the provisions of law in fraud of the rights of the plaintiff and to his injury. . . . This is not the case of a mere irregularity in the proceedings, nor of an omission to comply with the *forms* of law, nor yet of a mere non-compliance with the provisions of the law, *but it is a case of positive violation of the law in a material and vital point;* and to construe this statute as authorizing the relevy and re-assessment of such taxes upon the lots of the plaintiff would in my opinion not only violate the rule of strict construction before laid down, but would pervert the intention of the legislature as expressed therein."

Whether the remarks of Justice Lyon in this case as to the construction which should be given to chapter 316, P. & L. Laws of 1869, have been in any way modified by the subsequent decisions of this court in the cases of *Mills v. Charleton*, 29 Wis., 400; *Dean v. Borchsenius*, 30 Wis., 236; and *Evans v. Sharp*, 29 Wis., 564, is wholly immaterial in the consideration of this case. It is certain that the opinions of this court in the two cases first above cited, as to the construction which should be given to chapter 132, Laws of 1868, have never been questioned; and we have no disposition to question their correctness as applicable to the facts in the case at bar.

We are clearly of the opinion that the claim of Berg or his assignee for compensation for work done upon the street in front of the plaintiff's lot, awarded to him by the common council of the city upon a compromise, when it is clearly shown that the work was not done either in accordance with his contract or with the plans or specifications adopted by the common council for grading and grubbing said street, is in no sense a special tax, and there is no more power in the common council to charge the plaintiff's real estate with the payment thereof, than there is to charge his property with

the entire payment of any other claim made for work done for the city. To charge the lot owner with the cost of work done upon the street, it must at least be shown to have been done in execution of a plan adopted for the improvement of such street. This the evidence in this case fails to show; and the attempt to reässess it on plaintiff's land was illegal.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded, with directions to such court to grant the relief prayed for in the complaint.