### ABBOT v. CITY OF MILWAUKEE et al.

#### (District Court, E. D. Wisconsin. June 5, 1913.)

MUNICIPAL CORPORATIONS (§ 281*)—STREET PAVING—ASSESSMENT FOR COST OF WATER, GAS, AND SEWER CONNECTIONS—CHARTER PROVISIONS.

Chapter 8, § 17, Milwaukee Charter, provides that, when the common council shall order the paving of a street in which water or gas mains or sewers have been laid, it may by resolution require the board of public works to cause service pipes and connections to be made therewith at the cost of the property fronting on such street; that the board shall give notice to the owners by publication for six days in the official papers requiring them to do the work according to a plan and specification to be before prepared and on file; that, if such owners shall refuse or neglect to do the same before the paving, "and within 10 days after the publication of such notice, the said board may procure the same to be done," the cost to be made a special assessment against the property. After such a notice had been ordered published with respect to a street fronting complainants' property, but before the completion of the publication, the board advertised for bids for the work, and before the expiration of 10 days after the completion of the publication let a contract for the work, which was done, and the cost assessed against complainants' property. *Held*, that the right of complainant to do the work himself was a substantial right; that the steps prescribed by the charter must be taken in orderly sequence, and the taking of each is a condition precedent to the right to take those following it; that, until the expiration of the 10 days during which complainant had the exclusive right to do the work, the board was without power or jurisdiction to take any steps to have it done; and that its action in the premises rendered the assessment invalid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 745–749; Dec. Dig. § 281.*]

In Equity. Suit by Edwin H. Abbot against the City of Milwaukee, Joseph P. Carney, as treasurer of said city, the Badger Construction Company, and the D. M. Sneddon Company. On motion by defendants to dismiss. Motion denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complainant has filed his bill seeking to avoid certain taxes or special assessments for improvements levied by the defendant city against property owned by him in the city of Milwaukee; and to restrain the treasurer from selling such property, and to require the other two defendants to surrender for cancellation certificates issued to them for the doing of the work whose cost to the city is represented by the alleged invalid assessments.

The plaintiff's property is designated as block No. 32, a tract of considerable size, through which there runs in an easterly and westerly direction Conway street, for whose pavement the defendant city had taken the steps detailed in the bill, but the matter of which paving and the assessments levied therefor are not at this time before the court for consideration. The charter of the city of Milwaukee (chapter 8, § 17) contains the following provision with reference to the laying of water and gas service pipes and house drains when a street is about to be paved: "Whenever the common council shall order the paving or repairing of any street in the city of Milwaukee, in which water and gas mains and sewers, or either of them, shall have been previously laid and constructed, they may also by resolution require the board of public works to cause water and gas service pipes and house drains to be first laid in such street, at the cost of the property fronting such street, from the main sewer and water and gas mains in such street, to the curb line on either side of the street, at intervals not less than twenty feet, along the whole length of such paved street, except at street and alley crossings; and the board of public works shall thereupon give notice to the owners or occupants of the property adjoining such paved street, by publication thereof for six days in the official papers, requiring them to do such work opposite their respective lots, according to a plan and specification to be before prepared and on file in the office of said board, showing the location and size, and the kinds and quality of material of such lateral sewers or drains, and water and gas service pipe; and if such owners or occupants shall refuse or neglect to do the same before the paving or repairing of said street so ordered, and within ten days after the publication of such notice, the said board may procure the same to be done, and charge and assess the expense thereof to the lots or parts of lots fronting upon such work in the manner provided in and by section nineteen of chapter seven of this act; and the same shall be levied and collected as other special assessments are levied and collected in said city; provided, no street shall be paved or repaved by the order of the common council, unless the water and gas mains and service pipes, and necessary sewers and their connections shall, as required by the common council, be first laid and constructed in that portion of such street so to be paved or repaired."

The bill, paragraph 12, contains the following averments: "This plaintiff further shows that on or about the 1st day of March, 1912, the said commissioner of public works prepared a plan and specifications for laying water and gas service pipes and house drains to be laid in said part of Conway street hereinbefore mentioned, and that the common council of said city at a regular meeting thereof held on the 19th day of April, 1912, authorized and directed the said commissioner of public works pursuant to law to cause the necessary house drains and water and gas connections to be laid in said street from the sewer and water and gas mains to the curb line on either side. That thereupon the deputy commissioner of public works on or about the 21st day of May, 1912, issued a notice as follows: 'Office of the Department of Public Works, Milwaukee, May 21, 1912. In accordance with the requirements of sec. 17, ch. 8, of the city charter notice is hereby given to the owners or occupants of any lot, part of lot or parcel of land fronting or abutting on the several streets hereinafter mentioned in the city of Milwaukee, that such owner or occupant is required to construct all sewer drains, water service pipes and gas service pipes to connect their said premises with the sewers, water and gas mains in said streets in accordance with the plans and specifications on file in this office.' Then followed a list of several streets among others the following: '17 Ward, Conway street, from the east curb line of Logan avenue to the west curb line of South Bay street.' The notice then proceeded as follows: 'The work must be done on or before the 3rd day of June, 1912, failing in which it will be let by contract as provided by law.'

That said notice was countersigned by the comptroller of said city, and thereupon was published in the official papers of said city for six consecutive days commencing in some of said papers upon May 22, 1912, and in others on May 23, 1912, the publication being completed on the 29th day of May, 1912; that instead of allowing the owners or occupants of the property fronting upon the streets mentioned in said notice 10 days time after the publication of said notice to do such work as provided in said charter the commissioner of public works on the 28th day of May, 1912, issued a call for bids for doing said work, proposals therefor to be received until the 7th day of June, 1912, at the office of said commissioner, and that said notice was countersigned by the comptroller of said city on the 29th day of May and published in the official papers of said city for six days, commencing on May 31 and ending June 6, 1912. That on the 7th day of June, 1912, the work covered by said notice was let to one W. T. Werner, and said commissioner thereupon entered into a contract with said Werner for the doing of said work at the prices following, namely, house drains at $15 each, long connections at $16.50 each, short connections at $12.80 each. That said contract provided that said work should be done within 15 days after its date. That said Werner accordingly performed said work, and the same was completed and accepted by said city on or about the 12th day of July, 1912. That thereafter the said commissioner of public works made a report to the comptroller of said city stating and certifying that the work covered by said contract had been done in front of those portions of said block 32 lying north and south of Conway street, respectively, and of the cost thereof at the contract price aforesaid. That the said comptroller thereafter at the time of making his annual report to the common council of the lots or parcels of land subject to special taxes or assessments, included the said land of this plaintiff so reported to him by said commissioner of public works stating the sum of $166.80 was chargeable therefor against that part of block 32 lying north of Conway street and that the sum of $157.50 was chargeable therefor against that part of said block 32 lying south of Conway street. That said amounts were thereafter respectively carried into the tax roll of the city of Milwaukee for the taxes of said city for the year 1912 and levied and assessed as a tax against such parts of said block 32, respectively."

The defendants have now moved to dismiss the paragraph of the bill just quoted, assigning as ground therefor its insufficiency to sustain the claim of invalidity of the assessments.

Frank M. Hoyt, of Milwaukee, Wis., for plaintiff.
Clifton Williams, of Milwaukee, Wis., for defendants.

GEIGER, District Judge (after stating the facts as above). The charter provision (section 17, supra) aims to provide the method and means whereby, in the situation of contemplated street paving, water and gas service pipes and house drains be laid. Manifestly an object to be accomplished is to prevent tearing up permanent pavements. It grants to the council the power to require such pipes and drains to be laid; and upon default by the owners of abutting property to have them laid by the commissioner of public works. When, therefore, the owner is required to lay them, he must be conceded to have the right to comply. Whether the charter grants him that right or merely recognizes his antecedent right is not material. It may be assumed that he has such right, and that the charter provision is effective to compel him, in the situation noted, to exercise it, or to submit to having his property burdened with the cost which the municipality may incur upon his failure. In any view, it is a substantial right in whose full exercise, and against whose improper foreclosure the owner is entitled to protection. Johnson v. Oshkosh,

21 Wis. 186; Kneeland v. Milwaukee, 18 Wis. 411; Foote v. Milwaukee, 18 Wis. 270; Rork v. Smith, 55 Wis. 77, 12 N. W. 408.

Now the bill discloses, in brief, that on April 1, 1912, the commissioner of public works prepared the plans and specifications for the work in question; that on *April 19th* the council by resolution required him to cause such work to be done; that on *May 21st* he issued a notice to owners and occupants to do the work, specifying therein that it "must be done on or before the 3d day of June, 1912, failing in which it will be let by contract as required by law"; that the publication thereof was begun on *May 22d* in some of the official papers, and on *May 23d* in others. It was therefore completed *May 29th*. On *May 28th* the commissioner called for proposals to do the work, stating that bids therefor would be received until *June 7th*. The publication of such call for bids was completed *June 6th;* and on *June 7th* the bids were opened, a contract let and entered into on that day with one Werner who completed his work *June 12th,* the commissioner thereupon reporting and certifying to the comptroller the cost of the work which was accordingly assessed against the property as stated. In other words, the city called for bids before the notice to the owner was given (i. e., before the publication thereof was completed), and actually awarded the contract before the expiration of the 10 days thereafter afforded by the charter to the owner for the doing of the work.

To accomplish the ultimate purpose of having the work done consistently with due protection of the owner's right to do the work, these steps were to be taken and these conditions complied with: (a) The resolution by the council directing the commissioner to cause it to be done; (b) the preparation and filing of plans and specifications; (c) notice to the owner to do the work; the same to be published for six days in the official papers; (d) the lapse of ten days after publication of notice within which such owner is required to do the work.

It is clear that the exercise by the owner of his right to do the work, and the exercise by the city of its right, cannot concur in point of time. The latter arises when, by the provisions of the charter, the former has been foreclosed. Until then, it can neither do the work nor create the liability with whose satisfaction the owner is ultimately burdened if he does not do the work. The authorities cited by counsel for complainant demonstrate that the charter provision in question and similar provisions have uniformly been so construed that, not only the taking of each of the various steps, but also the order in which they are to be taken, is of the essence of the procedure; that the taking of each is a condition precedent to the right to take those following it. Myrick v. La Crosse, 17 Wis. 444; Wells v. Supply Co., 96 Wis. 122, 70 N. W. 1071; Kneeland v. Milwaukee, supra; Johnston v. Oshkosh, supra; Fass v. Seehawer, 60 Wis. 525, 19 N. W. 533; Rork v. Smith, supra.

It is urged on behalf of the city, that, if the abutting owner does not start operations to do the work within the 10 days, then the city may do the work; and, inasmuch as there is no allegation that the latter actually began the work within the 10 days, the mere making of the

contract by the city within that period was permissible, considering it to be provisional, or conditioned upon the failure of the owner to so do the work. But the answer to this is, as indicated, that the legality of the tax depended, not upon the manual doing of the work by the city, but upon its power, its jurisdiction, to make the contract whose burden is carried into the assessment against complainant's property. Aside from this, it would manifestly open the door for oppression of owners, if during the limited time awarded to them for doing the work the city could enter the field as a competitor. If the owner's right to do the work is substantial, then certainly during the time specified, not only should he be free to do it, but, the market for having it done, should be free to him.

The suggestion that these charter provisions may be regarded as directory, that the city may proceed upon a hypothesis that the owner may not exercise his right, is to my mind wholly repugnant to the notion that the right is substantial; and, if entertained, would, as has been stated, "effectually fritter away all the rights" of the owner. Leach v. Cargill, 60 Mo. 316; Rork v. Smith, supra, 55 Wis. 80, 12 N. W. 408.

The conclusion is that the failure by the city to give to the owner the full 10 days after proper publication of the notice constitutes a fatal jurisdictional defect in an assessment carrying to complainant's property the burden of a contract made by the city within such time; and the motion to dismiss must be denied.