## MYRICK vs. THE CITY OF LA CROSSE and others.

The practice of restraining the sale of lands for illegal taxes or assessments has been long established in this state; and it is now too late for the courts to inquire whether it was wisely established.

Wherever, in such a case, it appears that there is any portion of the tax which the plaintiff ought, in justice, to pay, he will be compelled to pay it as a condition of relief.

The charter of the city of La Crosse provides that whenever the street commissioners shall determine to make certain improvements, they shall "cause to be made an estimate of the whole expense thereof, and of the proportion to be assessed and charged to each lot, and in case of grading streets, alleys or sidewalks, of the number of cubic yards to be filled in or excavated in front of each lot; and such estimate shall be filed with the city clerk, for the inspection of all the parties interested." The same section then provides that the commissioners shall give notice to the owners or occupants of lots, "by advertisement for two weeks," requiring them "to do the work mentioned in such notice within a reasonable time, to be therein specified, and if such work shall not be done within such time, the said commissioners shall enter into contract for the doing thereof." *Held,* that the making and filing of the estimate of the number of

cubic yards to be filled or excavated in front of each lot, was a condition precedent to the publication of the notice to the owner.

A notice to the plaintiff published by the commissioners, requiring him to do certain grading of streets in front of lots belonging to him in said city, contained no specification of the work to be done, except that he was to grade the streets "to the grade li~ ~s established." It did not appear that any estimate of the work was filed with the city clerk before the time specified in the notice. *Held,* that this was a material defect in the proceedings, and contracts for the work having been let by the commissioners, and the lots assessed for the amounts, a sale of them for the assessments should be restrained.

APPEAL from the Circuit Court for *La Crosse* County.

The case is stated in the opinion of the court.

*Angus Cameron* and *Hugh Cameron,* for the appellant.

*J. C. Hopkins,* for respondents, contended that before a court of equity should interfere to restrain the collection of the amounts assessed against the lots in question, the plaintiff should be required to show that the assessment was inequitable. The court should not interfere for a mere *irregularity,* without any pretense of injustice. *Mills vs. Gleason,* 11 Wis., 497.

*By the Court,* PAINE, J. This action was brought to restrain the sale of certain lots of the plaintiff for special assessments for the improvement of streets, and to cancel the assessments. As to a part of the lots the court granted the relief sought, but refused it as to the rest, from which refusal the plaintiff appeals.

The practice of restraining the sale of lands for illegal taxes or assessments has been long established in this state. Whether it was wisely established or not, it is now too late for the court to inquire. If unwisely, it is for the legislature to correct it.

It is true, this court has of late applied to such cases the old equitable rule of compelling him who seeks equity to do equity. So that wherever it appears that there is any portion of the tax which the plaintiff ought in justice to pay, he will be compelled to pay it as a condition of relief. But no such

thing appears here. On the contrary, it appears that the plaintiff has paid all his other taxes, except the assessments complained of.

The question then is, whether the assessments upon those lots the sale of which the court below refused to restrain, were legal or not? Several objections were taken to their validity, but we shall pass only upon one, which we consider as fatal.

Section 7 of chapter 6 of the charter of La Crosse, under which these proceedings were had, provides that whenever the street commissioners shall determine to make any such improvements, they shall " cause to be made an estimate of the whole expense thereof, and of the proportion to be assessed and charged to each lot, and in case of grading streets, alleys or sidewalks, of the number of cubic yards to be filled in or excavated in front of each lot, and such estimate shall be filed with the city clerk for inspection of all the parties interested." The same section then provides that the commissioners shall give notice to the owners or occupants of lots, " by advertisement for two weeks," requiring them "to do the work mentioned in such notice within a reasonable time, to be therein specified ; and if said work shall not be done within such time, the said commissioners shall enter into contract for the doing thereof."

It seems very clear to us that the several steps provided for in this section are to be taken in the order in which they there stand ; and that the taking of each constitutes a condition precedent to the right to take those following it. According to this, the making and filing of the estimate of the number of cubic yards to be filled or excavated in front of each lot, was a condition precedent to the publication of the notice. That it was so, is evident from the very nature and object of the two provisions. Before parties interested can be properly notified to do any work, it must in some way be determined what work is to be done. This was the function of the estimate. The object of the notice was, that the owners might

know what was required of them, and do the work themselves if they chose. The notice was intended to be based upon and refer to the estimate. The notice proved in this case contains no specification of the work to be done, except that the owners are required to grade the streets "to the grade line as established." To determine what they were to do in order to accomplish that, it was necessary for them to refer to the estimate, and the charter clearly intended that this should be previously filed, and open to their inspection. Without it the notice is defective.

In this case we think the evidence fails to show that any estimate was ever filed at all. It shows positively that none was made until after the publication of the notice. And even taking the finding of the court below as true, though we think it was unsustained by the evidence, it does not show any compliance with the charter. It finds that the notice was first published on the 25th day of August, 1857, next on the 1st of September, and lastly on the 8th of September following. It then finds that within a week after the first publication, the commissioners caused an estimate to be made. Even if it had been made and filed within a week after the first publication, it would not have left a publication of two weeks, as required. But the court does not find that it was *filed* within that week; but, although there is an attempt to state the time of filing, the date is left blank in the finding. And this blank seems not to have been a mere clerical omission, for the same blank exists in the evidence. This estimate was searched for on several different occasions, in the city clerk's office, and never could be found. It was searched for by the witness Lord, at the time this notice was published, he being interested in the matter. It was searched for afterwards, but never found. There was nothing having enough substance to be called evidence, to show that it was ever filed there. The only thing from which it could even be imagined was the statement of Rogers,*

*Clerk of the board of street commissioners in 1857.

that if he ever received such a paper he must have filed it there. But this is clearly only his opinion as to what he would have done. He said positively that he had no recollection that the paper was ever left with him, or that he ever left it at the city clerk's office. There is then nothing in the evidence from which the blank in the finding of the court below, upon this point, can be filled.

And this leaves the case with this material defect in in the proceedings designed to authorize a valid sale of the plaintiff's lots for these assessments. It cannot be regarded as merely a technical defect, or one of form only. The plaintiff was deprived of a substantial, valuable right secured to him by the charter. And by the familiar principles applicable to questions of this kind, the assessments were invalidated by such non-compliance with the law.

So much of the judgment as is appealed from, is reversed, with costs, and the cause remanded with directions to enter judgment for the plaintiff as prayed for in the complaint.