## KNEELAND VS. THE CITY OF MILWAUKEE and others.

The authority of the street commissioners of the city of Milwaukee is purely statutory, and the validity of their acts depends upon their having proceeded step by step in strict conformity to the statute.

Under chap. 213, Gen. Laws of 1863, the making and filing of plans and specifications of work to be done in constructing sewers in said city, are conditions precedent to the power of the commissioners to advertise for proposals and award contracts for such work; and the due filing of full *specifications* of the work will not render such contracts valid, if the *plans* have not been made and filed as required by the statute.

Action by a lot owner in said city to have certain street commissioners' certificates of work done in constructing a sewer in front of plaintiff's lots, under a contract let by said commissioners in behalf of the city, and also certain special taxes assessed upon the lots for the amounts named in said certificates, declared void, and to restrain the sale of the lots for such taxes. It appeared that no plans of the sewer had ever been made or filed in the office of the city comptroller as required by the statute, and that the specifications which had been filed previous to the letting, were defective in certain particulars (which will appear from the case). *Held*, that the plaintiff was entitled to the relief demanded.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought by the plaintiff as the owner of certain lots in the city of Milwaukee, to have certain street commissioners' certificates of work done in constructing a sewer in front of his lots under a contract between the city and the defendant *Burnham*, and also certain special taxes assessed upon the lots for the amounts named in said certificates, declared void, and to restrain the sale of the lots for such taxes. The complaint alleges, *inter alia*, that no plans for the sewer proposed to be constructed under said contract were made and filed in the office of the city comptroller of said city, as required by secs.

2 and 3, ch. 213, Laws of 1863, before the expense of said proposed sewer was apportioned upon the several lots and parcels of land to which the same was by said act made chargeable, nor before the making of said contract ; that a paper was filed in said office, purporting to be an estimate and specifications for such sewer, a copy of which is annexed to the complaint, but no other paper, or description of said proposed sewer, was made or filed in said office at or before the time of letting said contract; and that said apportionment and contract were both made without reference to any plans.—A copy of the "estimate and specifications" above referred to, was annexed to the complaint as a part thereof. It provided, among other things, that the sewer should be "laid to a grade as shown by a plan in the office of the city surveyor." It also contained the following : "Man holes shall be made in said sewer opposite the alleys in all blocks between Second and Sixth streets, and for the balance of the sewer at such places as the street commissioners shall direct, at distances not less than four hundred feet." Said sewer was to be constructed "along the center line of Wells street, from the Milwaukee river to the west line of Twelfth street." The distance from Second to Sixth street is about one-half of the whole length of the sewer.

The defendant *Burnham* answered. On the trial, F. S. Blodgett, the city surveyor of Milwaukee, by whom the estimates for said sewer were made, was called as a witness for the defendants, and testified that he did not think any plan of this sewer could be made, but that a cross section could be made. *Question:* "Was a plan of that sewer necessary?" Objection overruled. *Answer :* "No, not with these specifications." On cross-examination he said : "The term 'plans,' as used by architects, builders and engineers, means drawings; it includes elevations, sections, ground plans, &c. Plans of a sewer like this would be sections of it; no others would be necessary. I have made sections of sewers ; thought I made a section of this one.

Think the builder could build this sewer in all its parts from these specifications. The grades of the sewer could not be found from the specifications. I think the specifications required it to be laid to a grade as given by the city surveyor. They refer to a profile of the grade which I had made, and which I had in my office. The specifications do not show the size, shape, thickness, or any other dimensions of the man holes. Builders could not construct these without directions outside of the specifications. We did not think it necessary to specify them. They were of small consequence. The specifications do not show where the man holes are to be made in the sewer—whether in the top or side." Witness was then shown drawings of the sewer, showing longitudinal and cross sections of the same, and said: "These are proper plans of this sewer."—Edward H. Brodhead was then by the called plaintiff, and testified: "I am a practical engineer; have been for about thirty years engaged as such upon railroads and canals. Plans are such drawings as will show the different parts of the work. They include cross sections and longitudinal sections. The term embraces all the drawings necessary to enable the contractor to do the work, and make an estimate for doing it. Specifications are more in detail, and specify the kind of material to be used; they are a description of the plans, and are expected to show in detail sufficiently all the parts that are not shown on the plans." The witness was here shown the specifications annexed to the complaint, and also a profile of Wells street from the Milwaukee river to Twelfth street, containing also a longitudinal section of said sewer, and with figures attached showing, 1. The width, on the base line, of the several blocks along said street, from the Milwaukee river to Twelfth street, measuring from the center of one cross street to the center of the next. 2. The distance from the base line of the grade line of Wells street at the center of each cross street. 3. The distance from the base line to the bottom line of the sewer at the center of each cross street. 4. The

height of the sewer at each of the same points. Witness continued: "I think these specifications, with this profile, would enable the contractor to build the sewer, except the man holes. The cost of man holes would not be very materially different, whatever the plan. The cost would depend on their dimensions, the thickness of the walls and the manner of building them; according to these specifications, those things are all left to the discretion of the street commissioners and city surveyor. No other plans of this sewer can be made than sections. This profile, which is also a longitudinal section of the sewer, was very important if the contractor was also to do the excavation; under these specifications, and the directions of the street commissioners and city surveyor, the sewer could be built without plans. To build the sewer without instructions from the engineer, the contractor would need these specifications, this profile showing grade and longitudinal section, and a cross section. This would still leave the man holes subject to the directions of the engineer. These same things are also requisite to enable the contractor to estimate and bid for the work. To estimate closely he should have the plans of the man holes also; but if he was experienced in such work, he would be able to judge pretty nearly what they would cost, and to make sufficient allowance in his bid for any peculiarity of form or size, which the street commissioners or engineer might require."

The court found as facts, *inter alia*, the following: "No plan or plans for the sewer referred to in the complaint and answer, were ever made by the city engineer or by the city surveyor of said city, and no plan or plans for said sewer were ever filed in the office of the city comptroller of said city; no plans could be made, except sections thereof, and under the contract and specifications no plans were necessary in constructing said sewer. The only document or paper relating to said sewer, which was filed in the office of said comptroller, prior to the letting of said contract for the construction of said sew-

er, was and is the paper, a copy of which is attached to the complaint, and purports to be an estimate and specifications for a sewer in Wells street, and a paper containing merely the apportionment of estimated cost of said sewer."

Upon the facts as found, the court held that the plaintiff was not entitled to the relief demanded, and that the complaint must be dismissed. Judgment accordingly; from which the plaintiff appealed.

*Joshua Stark,* for appellant, cited the act authorizing the construction of the sewer described in the complaint,* and also the following cases: *Dean v. Madison,* 9 Wis., 402, 405-8; *Knowlton v. Rock Co.,* id., 410, 417, *Myrick v. La Crosse,* 17 id., 442; *Scott v. Onderdonk,* 4 Kern., 9; *Kyle v. Malin,* 8 Ind., 34.

*Butler & Cottrill,* for respondent *Burnham:*

If a plan is to be made at all, it must be of *the sewer*—not of a section of it, not of a longitudinal profile of it. The appellant is not to be permitted to say that a plan must first be made, and when asked to show the possibility of doing that, answer by showing a plan of a section of the sewer. The sew-

---

*Chapter 213, Laws of 1863. The first section, in general terms, authorizes the street commissioners of the fourth ward of the city of Milwaukee to cause to be constructed a sewer from the west side of Twelfth street at its intersection with Wells street, through said Wells street to the Milwaukee river, and declares that the expense thereof shall be chargeable upon certain lots and parts of lots there specified. Section 2 is as follows: " Whenever said street commissioners shall determine that said sewer shall be constructed, they shall cause plans and specifications therefor to be made by the city engineer of said city of Milwaukee, and said sewer shall be constructed in accordance therewith. Said street commissioners shall cause an estimate to be made by said city engineer, of the whole expense of constructing said sewer, which plans, specifications and estimate shall be filed in the office of the city comptroller of said city. Upon the filing of said plans, specifications and estimate, said street commissioners and city engineer shall proceed to apportion the expense * * *. Such apportionment of such expense shall be in writing, shall be signed by said street commissioners and said city engineer, and shall also be filed in the office of said city comptroller." Section 3 provides that upon the filing of said plans, specifications, estimate and apportionment in the office of said city comptroller, said comptroller shall immediately advertise in the official paper or papers of said city, for sealed proposals for constructing said sewer, according to said plans and specifications, and shall specify in such notice the time and place when such proposals will be received and opened.—REP.

er itself has both length and breadth. A section of it cannot have both. All the witnesses testify that no plan can be made except of a section. The plans furnished by the appellant show the same thing. We submit that the act, however, like every other, is to have a reasonable construction. The plans and specifications were required only to enable the contractor and others to determine how the sewer was to be built and its cost. This could all be ascertained and the sewer built from the specifications, as all the witnesses testified. The provision should be held to be merely directory, and certainly so, as the appellant failed utterly to show that he was damaged by the omission to file them. *Doughty v. Hope.* 3 Denio, 249 ; *Striker v. Kelley*, 7 Hill, 24; *Wiggins v. Mayor*, 9 Paige, 24; *Matter of Mt. Morris Square*, 2 Hill, 20. 2. We insist upon the application of the rule here that no tax shall be invalidated upon any ground which does not affect its substantial justice. *Mills v. Gleason*, 11 Wis., 470 ; *Smith v. Cleveland*, 17 id., 556 ; *Warden v. Fond du Lac Co.*, 14 id., 618. If the act is to be treated as a mere amendment to the charter—and we see no other way of treating it—this is the rule of the charter. Ch. 8, sec. 19 ; sec. 7, ch. 158, Pr. Laws of 1856. *Smith v. Cleveland* decides that it is competent for the legislature to enact this rule. We think it has been so enacted, but whether so or not, this court so declared the rule to be in the absence of the legislative provision.

*By the Court,* DIXON, C. J. It is a conceded fact that no plan or plans for the sewer were ever made, and none ever filed in the office of the city comptroller. The specifications filed in the office of the comptroller did not show the grade, but referred to it as shown by a plan in the office of the city surveyor. The man holes were wholly omitted from the specifications, except that they were to be made opposite the alleys in the blocks between certain streets, and for the remaining portion at such places as the street commissioners should di-

JUNE TERM, 1864. 417

Kneeland vs. The City of Milwaukee et al.

rect, at distances of not less than 400 feet. Their number was not fixed, and of their form and mode of construction nothing was said. They were left, as it is said, to the discretion of the street commissioners. It seems to us that these departures from the positive requirements of the act are fatal to the entire proceedings, and that the alleged taxes cannot be enforced. The authority of the commissioners was purely statutory, and, as to causing proper plans and specifications to be made and filed in the office of the comptroller, invested them with no discretionary power whatever. The plans and specifications were to be be made and filed before advertising for proposals for doing the work, and before the commissioners were authorized to award the contract. As in all cases where special power is conferred and the manner in which it is to be exercised is prescribed by statute, the validity of the acts of the commissioners depends upon their having proceeded, step by step, in strict conformity to the statute. They had no authority to dispense with any provision deemed essential by the legislature to the proper exercise of the power ; and neither have the courts. The making and filing of the plans and specifications were conditions precedent to the power of the commissioners to award the contract. *Myrick v. La Crosse,* 17 Wis., 442. In such a case it is idle to argue that everything material to the work was, or might have been, included in the specifications, and that the legislature might, without damage to the public interest, have omitted the plans. *Ita lex scripta est.* It is enough that the legislature deemed the making of plans also essential, and that we can see that they might have been of some benefit to contractors and others in enabling them to form a correct estimate of the expense of the work. But if the plans were not indispensable, still the specifications were defective. They did not include all the items of labor and material which were required for doing the work. The grade was not specified, and there was nothing in the office of the comptroller to show what it was to be, or the nature and

VOL. XVIII—27.

amount of the excavation.   This was certainly very important
to the contractor, who was to dig the trench and fill it up again
at so much per lineal foot.   The form and size of the man
holes, and the manner in which they were to be constructed, were
not fixed, and their number was left uncertain.   The expense
depended upon their dimensions, the thickness of the walls,
and the manner of building them.   These were very serious
omissions in the specifications.   They tended directly to en-
hance the prices for which the work would be undertaken by
contractors, who would bid only with reference to such contin-
gencies.   They were, therefore, directly detrimental to the pro-
prietors of the adjoining lots, who were to pay for the improve-
ment in the form of taxes to be levied upon the lots.   It is a
general rule, when measures are authorized by statute in dero-
gation of the common law, which may result in divesting the
title of one person to land, and transferring it to another, that
every requisite having the semblance of benefit to the owner
must be strictly complied with.   *Atkins v. Kinnan*, 20 Wend.,
241, and cases cited.   On the whole, we think that safety lies
only in a strict adherence to the requirements of the statute,
and that the proceedings of the commissioners cannot be
sustained.

The judgment must be reversed, and the cause remanded
with directions that judgment be entered for the plaintiff ac-
cording to the prayer of his complaint.