Wells vs. The Western Paving & Supply Co.

WELLS, Respondent, vs. THE WESTERN PAVING & SUPPLY COMPANY, imp., Appellant.

*April 8 — April 30, 1897.*

*Taxation: Restraining collection of illegal special assessment: Payment of general taxes as condition precedent: Pleading: Waiver: E*ı*, t of failure to tender amount legally due: Illegal excess, how determined.*

1. Where, by a city charter, payment of the general taxes chargeable to any property is made a condition precedent to an action to avoid a special assessment, a failure in that regard must be taken advantage of by demurrer or plea in abatement, or it will be held to have been waived.

2. Where an assessment of benefits for street improvements has been in all respects legally made so as to determine a proper basis upon which to apportion the cost of the improvement properly chargeable to abutting property, and the subsequent proceedings (in this case the inclusion of illegal elements of expense) result in charging such property an excessive amount for any cause, the owner cannot wait till the improvement is completed and his property has received the full benefit thereof, and then screen himself from the entire tax because of the illegal excess.

3. If, in such a case, the excess can be determined by mere computation, or without proof, failure to tender or offer to pay the balance before suit will be fatal to any claim for costs, and failure to plead an offer to pay fatal to the cause of action.

4. If, however, such excess cannot be determined by computation and without proof, the court should determine the same, as near as practicable, to a reasonable certainty, from the evidence produced on the trial, and require the payment of the balance as terms of granting relief against such excess.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Plaintiff owned sixty feet frontage on Wisconsin street, of lot 7, block 22, in the Seventh ward of the city of Milwaukee, and this action was brought to set aside a special assessment thereon for laying an asphalt pavement in front thereof.

The complaint sets forth, among other things, that the proceedings to charge the property with such special assessment were had in 1894, under ch. 184, Laws of 1874, being the charter of the city of Milwaukee, and the acts amendatory thereof; that the work was done by the defendant the *Western Paving & Supply Company* under contract duly entered into with the city of Milwaukee; that on completion of such contract there was issued to such company a certificate calling for $320.95 as the amount chargeable to plaintiff's property, assessed thereon as and for work done under such paving contract. The allegations of fact relied upon to avoid the special tax and certificate issued therefor are to the effect that the contract price for the work which was charged to the abutting property included keeping the pavement in repair for five years after its completion, setting limestone protecting curbing at the intersection of unpaved streets and alleys and at such other places as might be directed by the city engineer, and the expense of elevating the cross walks for the width of eight feet at the intersection of streets and alleys, and putting gutters along the same; that the specifications filed required such work to be done as a part of the paving improvement; and that by reason of such requirement the charges against plaintiff's

property were greatly increased over and above the amount legally chargeable thereto. The complaint alleges that plaintiff refused to pay the amount called for by the special tax certificate, whereupon such tax was duly extended on the tax roll of the city for the year 1894 against plaintiff's property, and that within the time required by law plaintiff paid all taxes on her property for such year, except such special tax. The relief prayed for was that the said special assessment, and the certificate referred to, be declared void; that the defendant city and its treasurer be restrained from selling plaintiff's property for the payment of said special assessment, or any part thereof; and that she recover of the defendants her costs and disbursements.

To the complaint defendants answered separately, setting up the provisions of the paving contract in regard to keeping the pavement in repair for the period of five years, and alleging that such provision did not increase the bid price for doing the work to exceed five per cent. of the total cost. On the 29th day of June, 1896, plaintiff moved the court for an order striking out such answers as frivolous, and for judgment. Such proceedings were thereafter duly had that such motion was granted, and judgment thereupon entered in accordance with the prayer of the complaint. From such judgment the defendant the *Western Paving & Supply Company* appealed.

For the appellant there were briefs by *Hoyt, Ogden & Olwell*, and oral argument by *F. M. Hoyt*.

For the respondent there was a brief by *Wells, Brigham & Upham* and *W. E. Black*, and oral argument by *Mr. Black*.

MARSHALL, J. The city charter of the city of Milwaukee provides that: "No person shall be permitted to institute any action or proceeding to set aside any assessment or special tax . . . upon any lot or tract of land . . . unless such person shall first pay or tender to the proper party, or

deposit for his use with the treasurer, the amount of all state, county and city taxes that may remain unpaid on such lot or tract, together with the interest and charges thereon." [Laws of 1874, ch. 184, subch. XVIII, sec. 34.] To meet such provision, it is alleged in the complaint 'that the plaintiff, within the time specified in the tax warrant, paid all taxes levied and assessed against his premises for the year 1894, except the amount assessed against such premises for the cost of said asphalt pavement and resetting the old curbing.' It is claimed that such allegation is insufficient; hence that the complaint fails to state a cause of action. It is unnecessary to determine the sufficiency of such allegation, for that does not go to the cause of action, but to the remedy to enforce it. Failure to pay the legal taxes in compliance with the charter was a condition precedent, strictly so called, to be taken advantage of by demurrer or by plea in abatement; otherwise to be treated as waived. Appellant failed to object in the proper manner, hence it is foreclosed on that point. The subject was fully discussed, and the rule applicable stated and applied, in *Lombard v. McMillan*, 95 Wis. 627.

It is not contended but that all the provisions of the charter were complied with up to and inclusive of the assessment of benefits and determination of the basis upon which the cost of the improvement should be apportioned and charged to the abutting property. But it is insisted that no authority existed for including in such cost keeping the streets in repair for a series of years, putting in protection curbing across unpaved streets and alleys, and raising and constructing cross walks, and that the inclusion of such elements rendered the special tax void. This court so held in *Boyd v. Milwaukee*, 92 Wis. 456, and appellant does not seek, as we understand it, to reopen what was there decided. That case came to this court on appeal from an order of the trial court granting an injunction *pendente lite*. The question of whether the property owner should be compelled to pay that part of

the tax which might legally have been assessed against his property as a condition of being relieved from the illegal and unjust excess was not decided. Appellant now contends that respondent should be so required, and that the trial court, instead of determining as a matter of law that the illegal elements in the tax could not be separated from the portion justly and equitably chargeable to the property, or that, if so separable, it was not the duty of the trial court to resort to evidence to make such separation, should have tried the issue of fact tendered on that subject, taken the evidence, determined the facts, and then not granted relief to respondent except upon condition of her paying the just and equitable part of the special tax.

The rule invoked by appellant was early laid down by this court, and has become thoroughly intrenched in the jurisprudence of this state, though perhaps not heretofore clearly extended so as to meet a case like this. It is based on the familiar principle of equity jurisprudence that he who seeks equity must do equity. Following such principle, it is well established that a court of equity will not grant relief to restrain a tax sale, cancel a tax certificate, or restrain the issue of a tax deed thereon, except upon terms that the taxes be first paid to which there are no objections, or which, in justice and equity, the property owner ought to pay. *Hersey v. Milwaukee Co.* 16 Wis. 185; *Bond v. Kenosha,* 17 Wis. 284; *Myrick v. La Crosse,* 17 Wis. 442; *Mills v. Gleason,* 11 Wis. 470. Though, for a time, these adjudications were supposed to have been somewhat discredited, reference being had to *Marsh v. Clark Co.* 42 Wis. 502; *Tierney v. Union Lumbering Co.* 47 Wis. 248; *Plumer v. Marathon Co.* 46 Wis. 163, and some other cases that might be cited, the doctrine of the early cases has since been repeatedly affirmed, and it stands now unassailable in this court. *Fifield v. Marinette Co.* 62 Wis. 532; *Wis. Cent. R. Co. v. Lincoln Co.* 67 Wis. 478; *Canfield v. Bayfield Co.* 74

Wis. 60; *Boorman v. Juneau Co.* 76 Wis. 550; *Green Bay & M. Canal Co. v. Outagamie Co.* 76 Wis. 587; *Kaehler v. Dobberpuhl,* 56 Wis. 480; *Hixon v. Oneida Co.* 82 Wis. 515. It is the settled doctrine of this court that it is not enough to avoid a tax in equity to show that the proceedings were irregular or even void, but, in addition, it must also be shown that the taxes were inequitable (*Hixon v. Oneida Co., supra*); that, where taxes are legal or, whether strictly legal or not, are just and equitable, and are joined with such as are illegal and inequitable, the illegal excess, if it can be separated, is only conditionally voidable in equity, the condition being payment of the balance of the taxes. *Wis. Cent. R. Co. v. Lincoln Co., supra.* Such equitable rule has been crystallized into legislative enactments, several of which followed promptly upon, and may safely be assumed to have been caused by, holdings of this court supposed to constitute a departure from the early rule governing the subject. The court promptly retraced its steps in that regard, gave full effect to such legislative enactments, and carried the spirit of the rule into effect in respect to all questions affecting taxation to which it was applicable, so that, as said by Mr. Justice TAYLOR in *Fifield v. Marinette Co., supra:* "The effect is to compel every taxpayer who comes into a court of equity to void his taxes for any cause to first pay such taxes on his property as he ought in justice to pay." Since the decision in that case, the legislative policy in that regard has been still more pronounced, as shown in *Day v. Pelican,* 94 Wis. 503, construing sec. 1164, S. & B. Ann. Stats., which provides that every person aggrieved by the levy and collection of any unlawful tax assessed against him in any town, city, or village may sue for recovery of all moneys so unlawfully levied and collected of him, " provided, however, that no action shall be maintained under the provisions of this section unless it shall be made to appear to the court that the plaintiff has paid more than his equitable share of such

taxes." This court held that taxes assessed and paid on property not taxable to the complainant could not be recovered if he possessed property of equal or greater value in the taxing district, which should have been, but was not, assessed for taxation.

From the foregoing it is obvious that the legislative policy and the administration of the law in equity is firmly set in the direction of compelling property owners to bear their just and equitable portion of the public burdens. Whether such equitable rule applies to special assessments, and, if so, to what extent, is worthy of some consideration. In *Myrick v. La Crosse*, 17 Wis. 442, the rule was invoked, but not applied. It may be assigned fairly as the reason therefor, that the lot owner was entitled to do the work himself, if he so chose; that the requisite proceedings were not had to give him that privilege before assessing his property for the cost of the improvement; hence that there was no jurisdiction for charging such property at all. In *Hayes v. Douglas Co.* 92 Wis. 429, the rule was not applied, for the obvious reason that the assessment of benefits requisite to jurisdiction to impose any tax on the abutting property for the improvement was not made. In *Watkins v. Zwietusch*, 47 Wis. 513; *Johnson v. Milwaukee*, 40 Wis. 315; *Rork v. Smith*, 55 Wis. 67; *Dean v. Madison*, 9 Wis. 402; *Jenkins v. Rock Co.* 15 Wis. 11; *Liebermann v. Milwaukee*, 89 Wis. 336; and *Saunderson v. Herman*, 95 Wis. 48 — the groundwork of the entire tax was wanting, in that there was a failure to give the lot owner the opportunity to do the work where such opportunity was secured to him by law, or there was a failure to make any assessment of benefits so as to arrive at a legal basis for apportioning the cost of the improvement, or there was some other difficulty going to the groundwork of the entire tax, and showing that it was unjust and inequitable. In *Kneeland v. Milwaukee*, 18 Wis. 411, the provision of the charter requiring filing of the plans and specifications,

Wells vs. The Western Paving & Supply Co.

which was a condition precedent to any proceedings to contract for the work at the expense of abutting property, was not complied with. In *Wells v. Burnham*, 20 Wis. 112, defective plans and specifications were filed. The court held, on demurrer, that the complaint stated a cause of action, because the failure to file perfect plans and specifications, and to let the contract with reference thereto, at least *prima facie* was prejudicial to the lot owner. Whether, on proof to the contrary, the trial court would have held the defect in equity sufficient to avoid the entire tax, was not decided. The decisions on this line may not be in entire harmony, but the foregoing, and others hereafter referred to, clearly show that in the main they support the rule that, where a proper assessment of benefits has been made, or the groundwork for a proper apportionment of the expense of the improvement has been legally determined, errors causing an excessive apportionment of the cost of such improvement will not defeat the whole tax in equity.

The sole complaint here is that certain elements of expense were improperly included in the cost of the improvement. Determine to what extent such elements enhanced the total cost of such improvement, deduct such excess from the total, and the result will show the amount which plaintiff in justice and equity ought to pay. In *Cook v. Racine*, 49 Wis. 243, the basis for apportioning the tax was properly determined. The contract was let to do the work for forty cents per front foot, when responsible parties offered to do the same for twenty-five cents per front foot. The action was to set aside the whole tax as void for fraud in letting the contract. On the trial it was established by evidence that twenty-five cents per front foot was a reasonable price, and that the municipal officers refused ample opportunity to let the same at that price. This court held, reversing the court below, that collection of the tax should be restrained and the certificate canceled on condition of payment, within such

Wells vs. The Western Paving & Supply Co.

reasonable time as the trial court might fix for that purpose, of a sum equal to twenty-five cents per front foot, with interest at seven per cent. per annum from the time the lot would have been sold for the tax but for the injunction. In *Mills v. Charleton*, 29 Wis. 400, it was directly held that special taxes levied for local improvements are to be regarded as one of the constitutional methods of taxing the citizen for the benefit of the public, and that any equitable rule which applies to other constitutional methods must, with equal propriety, be applied to it; that a tax lawfully imposed, whether in one mode or another, must be regarded as equally just and equally entitled to favor in a court of equity. Said Dixon, C. J., speaking for the court: "The reassessment here is by legal authority, except so far as it is vitiated by the mistake, which part is clearly distinguishable. The court perceives no reason for refusing to apply the principle to such a case, any more than to any other case of mistake or distinguishable excess in matters of taxation." The same rule was applied in *Meggett v. Eau Claire*, 81 Wis. 326.

The rule under discussion is not confined to cases of mere irregularities, as is sufficiently shown by *Mills v. Charleton, supra*, and *Cook v. Racine, supra*, but applies to all cases where the taxes are in part just and equitable, whether legal or not, and part illegal, unjust, and inequitable, if the latter can be distinguished from the former. The application of this doctrine, though there are cases indicating a contrary view, in our opinion should not be confined to instances where the illegal excess consists of distinct items or can be determined without evidence by mere computation, but should be extended to all cases where such excess can be judicially determined by evidence to a reasonable certainty, the same as other facts in issue; the burden being on the person seeking to enforce the tax which includes the illegal excess to establish by clear and satisfactory evidence the

amount that is justly and equitably chargeable to the prop-. erty. *Hebard v. Ashland Co.* 55 Wis. 145. The fact that such amount cannot be determined with exactness and without proof is no justifiable reason for allowing the property owner to escape the payment of the entire tax. If the amount of the tax can be determined by clear and satisfactory evidence, exclusive of the unauthorized and illegal elements,— and no reason is perceived why such cannot be done in this case,— the court, in the exercise of its equitable powers, has ample authority to and should determine the facts in that regard, and apply the proper remedy.

If the foregoing be an extension of the equitable rule, in view of *State ex rel. Roe v. Williston*, 20 Wis. 228, and other cases that might be cited, such extension is required to effectually give force to the manifest policy of the legislative department of the state, which it is the duty of the court to do within constitutional limits. It is in the direction of the ever-growing adaptation of equitable principles to the more perfect administration of justice, and is yet short of the advanced ground occupied by courts of the highest respectability elsewhere, as will be seen from a few examples. In *State Railroad Tax Cases*, 92 U. S. 575, there was no question but that the taxes were void for want of a legal assessment of the railway property. The very groundwork of the tax was wanting. The railroad companies sought to avoid all their taxes, notwithstanding it stood admitted that they had a large amount of real and personal property subject to taxation. Mr. Justice MILLER, speaking for the court, said, in effect, that evidently the property should be taxed by some rule; that it could not be said the whole tax is void in equity because a wrong rule had been adopted whereby an excessive amount was imposed; that the property holder in such a case cannot escape, and pay nothing, because the amount assessed is too much; that before he can be relieved of the excess tax he must pay what ought to be paid, so far as it can be as-

certained; that the observance of this principle will be just, and will prevent the largest part of tax litigation that comes to the federal courts; and that, with unanimity, such principle.is established by the supreme court of the United States for the guidance of all the federal courts in such cases.   To the same effect are *National Bank v. Kimball*, 103 U. S. 732; *German Nat. Bank v. Kimball*, 12 Fed. Rep. 96; *Pelton v. Nat. Bank*, 101 U. S. 143; *Cummings v. Nat. Bank*, 101 U. S. 153; *Williams v. Weaver*, 100 U. S. 547,— and many other cases that might be cited in the federal supreme and other courts.   The proper deduction . therefrom may be stated tersely in the words of the text in Desty, Taxation, 658, as follows: "It should be shown as near as possible what part is just and what part unjust, and that which is just should be paid as a condition of obtaining the relief sought."   In *Trustees of C. S. Railway v. Guenther*, 19 Fed. Rep. 395, the plaintiff's property had been purposely overvalued for the purpose of making it pay more than its just proportion of the tax.   It was held that it could not obtain relief in equity without its being first determined how much tax should be assessed upon the property when valued on the basis adopted for the valuation of other property, and the payment of such tax.   Further citations along this line could be made, but sufficient authority has been referred to to show the extent to which the rule under consideration is applied in the highest courts in this country.

From the foregoing we deduce the following conclusion: When, as in this case, the statutory requisites to the assessment of a tax for a street improvement upon abutting property are all complied with up to the time of filing the estimates or specifications for letting the work,— that is, when the assessment of benefits has been in all respects legally made, so as to determine a proper basis upon which to apportion the cost of the improvement properly chargeable to abutting property,— and the subsequent proceedings result ·

in charging such property an excessive amount for any cause, the owner cannot wait till the improvement is completed and his property has received the full benefit thereof, and then screen himself from the entire tax because of the illegal excess. If such excess can be determined by mere computation, or without proof, failure to tender or offer to pay the balance before suit will be fatal to any claim for costs, and failure to plead an offer to pay fatal to the cause of action; but if such excess cannot be determined by computation and without proof, the court should determine the same, as near as practicable, to a reasonable certainty, from the evidence produced on the trial, and require the payment of the balance as terms of granting relief against such excess.

The foregoing requires that the judgment be reversed and the cause remanded for further proceedings in accordance with this opinion.

