FRED D. WEAD ET AL., APPELLEES, V. CITY OF OMAHA
ET AL., APPELLANTS.

FILED FEBRUARY 22, 1905.    No. 13,679.

1. **Taxation:** BOARD OF EQUALIZATION. Under the provisions of section 161, chapter 12a, Compiled Statutes, 1901, known as "Omaha Charter," a board of equalization when properly in session, with due notice given, acts judicially and its action within its jurisdiction is not open to collateral attack except for "fraud, gross injustice or mistake."

2. **Complaints.** The provisions of section 164 of the same chapter, "No court shall entertain any complaint that the party was authorized to make, and did not make to the city council sitting as a board of equalization, nor any complaint not specified in said notice, fully enough to advise the city of the exact nature thereof; nor any complaint that does not go to the ground work, equity and justice of the tax," do not apply to cases of "fraud, gross injustice or mistake."

3. **"Gross injustice"** within the meaning of this clause must be so flagrant and excessive in its nature as to substantially deprive a citizen of his property or a part thereof without due process of law and be confiscatory.

4. **Excessive Tax.** Where proceedings up to the time of assessment by the board of equalization are regular, and in its determination the board errs in such a manner as to cause an excessive and unjust apportionment of the tax upon a particular piece of property, such error, as a general rule, will not defeat the whole tax in equity.

5. **Relief in Equity.** If such excess cannot be determined by computation and without proof, the court should determine the amount of tax justly chargeable against the property as nearly as practicable from the evidence produced on the trial, and require the payment of the same as a condition of granting relief against the excess.

APPEAL from the district court for Douglas county: GEORGE A, DAY, JUDGE. *Reversed.*

*C. C. Wright, W. H. Herdman* and *A. G. Ellick,* for appellants.

*H. W. Pennock* and *Charles A. Goss, contra.*

24

Letton, C.

This action was brought by Fred E. Wead and others, as plaintiffs, against the city of Omaha to enjoin the collection of certain assessments for paving levied in paving and improvement districts 168, 225 and 542 against the property described in the petition. The district court found in favor of the plaintiffs and entered a decree accordingly. The city of Omaha complains of said decree only so far as it affects the assessments levied in district 542, and prosecutes this appeal to reverse the action of the trial court so far as it adjudges the assessment levied in that district to be void. A number of irregularities are set forth in the petition of the plaintiff with reference to the creation of said district and the levy of the special assessment therein, but since the district court found for the appellant as to such matters and there is no cross-appeal here, they will not be considered. The ground upon which the district court found for the appellee was "that the assessment which was levied upon the plaintiff's property to pay for the cost of paving and curbing in improvement district 542 was inequitable and grossly unjust; that the assessment levied upon the greater portion of the property described in the petition was practically the full value thereof after the improvement had been made; that as to the balance it was grossly excessive and unjust." The evidence in the case supports the finding of the district court that the assessment was inequitable and grossly unjust, and that it was practically the full value of the property after the improvements had been made. The appellant city contends that this is a collateral proceeding; that there is neither allegation nor proof in the record that the assessments were fraudulently or corruptly made, and that since the board of equalization had jurisdiction to determine the benefits its finding is final and conclusive in a collateral attack.

We have repeatedly held that an equalization board when properly in session, with due notice given, acts

judically and its action within its jurisdiction is not open to collateral attack. *Webster v. Lincoln,* 50 Neb. 1; *Morse v. City of Omaha,* 67 Neb. 426; *Portsmouth Savings Bank v. City of Omaha,* 67 Neb. 50. We are satisfied with the rule thus laid down. It is the policy of the law to allow every person whose property may be affected by the findings of a board of equalization an opportunity for a hearing before said board. He may present his objections to their proposed action and his views as to whether or not special benefits will be conferred upon his property by the proposed improvement or as to the amount of such special benefit, and from the decision of such board he may prosecute error to the district court. Section 161 of the city charter (ch. 12a, Comp. St. 1901), in force at the time the taxes in question were levied, after providing that special taxes shall be levied to the extent of the benefits on abutting or adjacent lots and lands and that the assessment may be according to foot frontage if the board of equalization finds such benefits to be equal and uniform, provides that "all such assessments and findings of benefits shall not be subject to review in any legal or equitable action, except for fraud, gross injustice or mistake." Under these provisions of the statute, unless the assessment and finding of benefits was fraudulently made, was grossly unjust or was made by mistake, the action of the board within its jurisdiction is final. We think that without the insertion of this clause in the law the finding of a board of equalization made within its jurisdiction would no more be subject to attack collaterally than the judgment of any other inferior tribunal. This clause has in fact enlarged the field within which the decision of a board of equalization is vulnerable to attack. It includes "gross injustice" as a ground for review, while without this clause the "injustice" of the finding could not be attacked collaterally. In *Morse v. City of Omaha, supra,* it is said in the opinion, citing the clause under consideration:

"This provision, in effect, amounts to a declaration

that the action of the city council in finding that the
property is benefited to the full extent of the amount
levied, in order to justify an assessment per foot frontage,
can be reviewed for fraud, gross injustice or mistake. The
taxpayer has notice of the sitting of the city council to
be held for the purpose of equalizing and making the levy,
and if he is dissatisfied with the action taken concerning
the assessment by front foot, it is his duty to have such
action reviewed by a proper proceeding, and if he fails
to take such action, he cannot be heard in a proceeding
by injunction to allege that the tax is void for failure of
the council to make the finding referred to."

Taking this language in connection with the facts in
the case in which it was used, we have no fault to find
with it. But we think that, in so far as it may imply,
if it does so imply, that error is the only remedy for fraud,
gross injustice or mistake in the findings made by the
board of equalization, the statement is too broad as a
general proposition.

It is urged by the appellant that the provisions of sec-
tion 164 of the city charter, a part of which section pro-
vides, "No court shall entertain any complaint that the
party was authorized to make, and did not make to the
city council sitting as a board of equalization, nor any
complaint not specified in said notice, fully enough to
advise the city of the exact nature thereof; nor any com-
plaint that does not go to the ground work, equity and
justice of the tax," prevent any person from maintaining
any action complaining of the gross injustice of a special
tax unless he had first made complaint to the board of
equalization. We think this position is untenable. If
the party injured, before he could be heard upon the ques-
tion of whether a gross injustice had been done to him
by the action of the board, would be compelled to present
his complaint to that body, so also under these provisions,
where the board had acted fraudulently, or where it had
acted by mistake, the person injured would be debarred
of any remedy unless he had first presented his complaint

to that body. This, however, would be giving to an inferior tribunal an immunity from attack upon the ground of fraud which is not vouchsafed to a court of general jurisdiction. A judgment of a court may be impeached upon the ground that it was obtained by fraud, even though the rule exists that judgments are not subject to collateral attack. Further than this, if the only method of review of a decision of the board of equalization permitted by the law is by error proceedings, then of what meaning is the phrase which provides that it shall not be "subject to review in any legal or *equitable* action except for fraud," etc.? A proceeding in error is not an equitable action, and therefore the phrase "equitable action" would be meaningless. Construing these clauses of the two sections together, we are satisfied that the "gross injustice" which will permit an equitable action to be brought, which reviews the proceedings of the board of equalization, must be so flagrant and excessive in its nature as to substantially deprive a citizen of his property without due process of law, and that it is only in such an exceptional case that an independent action will lie. It may be regarded as settled law in this state that in so far as it is sought to take from the owner of private property the cost of a public improvement in excess of the special benefit which his property received by such improvement, this is, to the extent of such excess, the taking of private property for public use without compensation. *Morse v. City of Omaha, supra; Norwood v. Baker,* 172 U. S. 269, 43 L. ed. 443. In the instant case the evidence shows that the amount assessed against the respective pieces of property is largely in excess of the special benefits received. In fact, the testimony shows that the benefits to the property have been little or nothing, while the assessments have amounted to about $110 a 45-foot lot, in most instances being more than the lots are worth. This is practically the confiscation of the owner's property. It requires no argument to show that such an assessment is "grossly unjust," and therefore subject to review in an

equitable action by virtue of the statutory provision as hereinbefore quoted. *Norwood v. Baker,* 172 U. S. 269, 43 L. ed. 443; *Iowa Pipe & Tile Co. v. Callanan,* 125 Ia. 358, 101 N. W. 141. The supreme court of Georgia has well said:

"As to whether he was benefited or not, is a question which should address itself to the discretion of the municipal authorities. Their judgment upon this subject is ordinarily, except in the most extreme cases, conclusive; but, as we have before stated, it is not allowable that the municipal authorities, under the guise of a public improvement, should arbitrarily deprive the citizen of his estate. If, therefore, in the levy of such assessments, the cost of the improvement be so disproportioned to the value of the estate sought to be improved, as that the levy of the assessment amounts to a virtual confiscation of the lot owner's property, such assessment cannot be upheld as a legal or valid exercise of the power to tax for such improvements." As to when a court of equity is at liberty to interfere, that court then say: "The exact extent of the benefit necessary to uphold such an assessment is incapable of definition. But it may be asserted with perfect confidence, that the present is one of those extreme cases of such doubtful benefit and probable spoliation as will justify the interference of a court of equity in order to prevent the citizen from being arbitrarily deprived of his property." *City of Atlanta v. Hamlein,* 96 Ga. 381.

It was argued at the hearing that the plaintiff was not entitled to maintain his action for the reason that it was his duty, before he was entitled to the interposition of a court of equity in his behalf, to come into court with clean hands and offer to do equity by tendering to the city the amount equal to the special benefits which he had actually received by the improvement. In a case of this kind the maxim that he who seeks equity must do equity should be applied, if possible, and in a number of cases this court has applied this principle where it is sought to

set aside an illegal tax, sometimes however by compelling equity to be done as a part or condition of final decree. *Lynam v. Anderson,* 9 Neb. 367; *Hallenbeck v. Hahn,* 2 Neb. 377; *Hunt v. Easterday,* 10 Neb. 165; *Boeck v. Merriam,* 10 Neb. 199. But this argument is met by the appellee with the contention that the property in question received no benefit by virtue of the improvement, and, hence, that no sum was equitably due on account of the same; and, further, that the court cannot in a case of this kind readjust values and benefits so as to charge each property owner with the proportionate part of the cost of improvement, and that appellee cannot be required to estimate the benefit, if any, to each tract.

As to the argument that the property received no benefit, the petition alleges "that said assessment, if valid, would have been practically confiscation of all the real estate in said improvement district lying west of the Missouri Pacific right of way; * * * that said real estate west of said right of way was not and is not benefited to exceed the sum of $5 for each 50 feet abutting on said street, and the said real estate was not and is not able to bear a larger assessment for said purposes." These allegations are, in substance, an admission that such real estate was benefited to the extent of $5 for each lot, and show at least that the appellee has been able to estimate the benefit which each lot received.

As to the second argument—that it would be a hopeless task for the court to readjust the scheme of assessment—it is sufficient to say that this is not required of the court. The whole extent to which it can go in the assessment of the property is to ascertain the special benefits which each particular tract of land involved in this suit received by reason of the improvement, and to charge each tract with that amount. If the city authorities have caused improvements to be made in front of the property which cost a sum in excess of the special benefits received, such excess must be borne by the city at large and not alone by the owners of the property within the district.

We have been cited to a number of cases by the appellees which seem to hold that where such taxes are excessive, a court cannot ascertain the amount justly chargeable against the property, but that the tax must be relaid by the city authorities. In most of these cases the tax was void *ab initio* either by reason of lack of jurisdiction to levy the tax or by reason of the whole plan being so grossly inequitable and unjust as to be void on that account. In such case the whole proceedings are void, and the owner could not be charged with any part of a void tax. Cases of this class are *Howell v. City of Tacoma,* 3 Wash. 711, 29 Pac. 447; *Cain v. City of Omaha,* 42 Neb. 120, and *Hutcheson v. Storrie,* 45 L. R. A. (Tex.), 289. In these cases the whole plan and scheme of the assessment operated in such an unequal manner and with such a lack of uniformity as to the various tracts that the courts declared the whole plan void. A like case is *Norwood v. Baker,* 172 U. S. 269. In the instant case, however, the proceedings seem to have been regular. The whole scheme and plan is not so grossly unjust and unequal in its operation as to render it void, but certain property appears to have been taxed beyond the benefits received. The district court then is not required to review the whole scheme of assessment. It is only required to ascertain wherein the assessment may be excessive in amount as to each tract. We have already held in *Hutchinson v. City of Omaha,* 52 Neb. 345, that where the entire proceedings were void, "the court cannot impose, as a condition of relief against a void tax, the payment of such tax as would be lawful, where new proceedings and a different basis of assessment are necessary to ascertain what tax is lawful," and with this holding we agree. But in the instant case the board had jurisdiction to levy the tax and its only error was in levying an excessive amount upon the property of appellee. We cannot see that the district court is less able to determine what are the special benefits derived by reason of the improvement by each tract of property than the board of equaliza-

tion. The benefits found by the board are theoretically derived from evidence, and are ascertained and determined by the exercise of judicial faculties. We see no reason why the district court is not equally able to determine this question.

In *Wells v. Western Paving and Supply Co.,* 96 Wis. 116, 70 N. W. 1071, it is said: "The decisions on this line may not be in entire harmony, but the foregoing, and others hereafter referred to, clearly show that in the main they support the rule that, where a proper assessment of benefits has been made, or the groundwork for a proper apportionment of the expense of the improvement has been legally determined, errors causing an excessive apportionment of the cost of such improvement will not defeat the whole tax in equity." And the court concludes, "When, as in this case, the statutory requisites to the assessment of a tax for a street improvement upon abutting property are all complied with up to the time of filing the estimate or specifications for letting the work— that is, when the assessment of benefits has been in all respects legally made, so as to determine a proper basis upon which to apportion the cost of the improvement properly chargeable to abutting property—and the subsequent proceedings result in charging such property an excessive amount for any cause, the owner cannot wait till the improvement is completed and his property received the full benefit thereof, and then screen himself from the entire tax because of the illegal excess. If such excess can be determined by mere computation, or without proof, failure to tender or offer to pay the balance before suit will be fatal to any claim for costs, and failure to plead an offer to pay, fatal to the cause of action; but if such excess cannot be determined by computation, and without proof, the court should determine the same, as near as practicable, to a reasonable certainty, from the evidence produced on the trial, and require the payment of the balance as terms of granting relief against such excess." See *Barker v. City of Omaha,* 16 Neb. 269; *Darst v. Griffin,* 31 Neb. 668.

There can be no hard and fast line drawn between cases where the entire scheme of taxation is erroneous and void and those in which the amount assessed against each particular piece of property is merely excessive and unjust. In the latter class of cases, to which the instant case, as we think, belongs, the rule laid down by the Wisconsin court seems eminently fair and tending to do justice between both the individual property owner and the city. Each property owner ought to be compelled to bear his just and equitable proportion of the burdens of taxation, and as long as the system of making public improvements by special assessments prevails, he ought to pay in proportion to the amount that his property is specially benefited. · If his assessment is excessive, it should be reduced, but he should not be permitted to escape his share of the tax because he was asked to pay too much.

It appears that the tax has been laid upon certain unsubdivided tracts of real estate to a greater depth than the average depth to which the subdivided lands have been assessed. The district court, however, found that this was not a jurisdictional defect, and cannot be taken advantage of collaterally in this proceeding. In holding that this matter could not be examined into in this proceeding we think the court erred, and that it was within the jurisdiction of that court to have ascertained the average depth to which the unsubdivided land should have been assessed, to have held the lien valid as to this portion, and to have declared the assessment void as to the excess.

No attack was apparently made upon the petition upon the ground that the plaintiff failed to offer to do equity until the final argument in this court, and at this stage of the case we believe that the interests of justice would best be subserved by remanding the cause to the district court for further proceedings in accordance with this opinion.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in accordance with the opinion.

REVERSED.